

*William J. Thurman*
_____
Honorable William T. Thurman
United States Bankruptcy Judge

**Entered on Docket**
**January 30, 2013**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | | |
|---|---|---|
| In re: | ) | BK-S-09-31603-MKN |
| | ) | |
| WILLIAM A. GAYLER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JAMES F. LISOWSKI, | ) | Adv. Proceeding No.: 11-01410-MKN |
| | ) | |
| Plaintiff(s), | ) | Date:   January 16, 2013 |
| | ) | Time:  9:30 a.m. |
| v. | ) | |
| | ) | |
| 23 GOLDEN SUNRAY, L.L.C., et. al., | ) | |
| | ) | |
| Defendant(s). | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 727(a)(6)(A) AND GRANTING IN PART AND DENYING IN PART DEBTOR'S COUNTERMOTION TO TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 727(a)(6)(A)[1]**

---

[1] In this Order, all references to "FRBP" or "Rule" shall be to the Federal Rules of Bankruptcy Procedure. Any reference to "§" is to a provision of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise indicated.

1   On January 16, 2013, the Court[2] heard Trustee James F. Lisowski's ("Trustee") Motion for Partial Summary Judgment Pursuant to 11 U.S.C. § 727(a)(6)(A) ("Motion for Partial Summary Judgment") and Debtor William A. Gayler's ("Gayler") Countermotion to Trustee's Motion for Partial Summary Judgment Pursuant to 11 U.S.C. § 727(a)(6)(A) ("Countermotion for Partial Summary Judgment"). Appearances of counsel were made by Jessica M. Goodey, Esq., of Marquis Aurbach Coffing, on behalf of the Trustee, and Matthew T. Kneeland, Esq., of Sylvester & Polednak, Ltd., on behalf of Gayler.

The Court finds that notice of the hearing was adequate, that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b), and that venue is appropriately laid in this district.

From both the Trustee and Gayler's motions and supporting declarations, the Court finds that there is no genuine dispute regarding the following facts:

1) On November 16, 2009, an involuntary petition under chapter 7 was filed against Gayler in the main case.

2) On December 17, 2009, the Court issued its Order Granting Interim Relief Pursuant to 11 U.S.C. § 303(f) ("Interim Order"), which said:

> **ORDERED** that pursuant to Bankruptcy Code § 303(f), Gayler, the alleged debtor herein, individually, shall be enjoined from transferring, conveying, or concealing any real or personal property, in which he has an interest, directly or indirectly, with a value in excess of $10,000.00 without further order of this Court; and it is further
>
> **ORDERED** that Gayler is enjoined from causing any entity which he owns or controls, directly or indirectly (including but not limited to, through

---

[2] The Honorable William T. Thurman, Chief Judge of U.S. Bankruptcy Court, District of Utah, presided over this matter as a visiting judge designated by the Ninth Circuit Court of Appeals.

additional limited liability companies which Gayler controls and which in turn have an interest in the entities with which he is conducting business), from transferring any real or personal property with a value in excess of $10,000.00 without further order of this Court, or the majority vote of the non-related members, shareholders or partners. Non-related members, shareholders or partners, shall be defined as those members, shareholders or partners that are not affiliates or insiders of Gayler under applicable bankruptcy law; and it is further

**ORDERED** that except as provided for herein, nothing contained in this order shall be deemed or interpreted to enjoin any entity, including but not limited to those which Gayler directly or indirectly owns or controls, from conducting its business, and it is further

**ORDERED** that nothing contained in this order shall be deemed or interpreted to enjoin actions by third parties against the entities owned or controlled by Gayler or by such entities against third parties.

The "Golden Sunray Check" Transfers

3) On or about February 2, 2010, 23 Golden Sunray, LLC ("Golden Sunray") received a cashier's check for $200,000, made payable to 23 Golden Sunray, LLC ("Golden Sunray Check"). The check specifies that it was for "art work, furniture, TV's, audio visual, etc." The check was endorsed by "Morpheus, William Gayler, Manager," and was deposited into Golden Sunray's bank account, identified as Nevada State Bank Acct. No. ending in 3249.

4) On February 2, 2010, Gayler made two transfers from Golden Sunray's bank account: one for $5,040.97 to a checking account on which Gayler is listed as a co-account holder, identified as Nevada State Bank Acct. No. ending in 2348 and another for $5,046.70 to a checking account on which Gayler is listed as the sole account holder, identified as Nevada State Bank Acct. No. ending in 2618. Bank statements for both checking accounts reflect the deposits of the funds as a "credit line payment."

5) On February 2, 2010, Gayler wrote a $17,000 check to Sassicaia, LLC from TGF Holding, LP's ("TGF") bank account, identified as Nevada State Bank Acct. No. ending in 3330.[3]

6) On February 3, 2010, Gayler withdrew $43,000 from Golden Sunray's account through an official check.

7) On February 3, 2010, Gayler transferred $25,000 from Golden Sunray's account to The Jayden Kristopher Gayler Irrevocable Living Trust ("Jayden Account"), identified as Nevada State Bank Acct. No. ending in 9123. Gayler also transferred $18,000 from Golden Sunray's account to TGF's bank account.

8) On February 4, 2010, Gayler withdrew $25,000 from Golden Sunray's account.

9) On February 5, 2010, Gayler wrote a $25,000 check (no. 0091) from Golden Sunray's account to the William Gayler Irr Life Ins Trust.

10) On February 5, 2010, Gayler wrote a $25,000 check (no. 0092) from Golden Sunray's account to TGF.

11) On February 8, 2010, Gayler wrote a $9,200 check (no. 0093) from Golden Sunray's account to Brandyn Gayler and a $10,000 check (no. 0094) from Golden Sunray's account to Brianna Gayler.

12) On February 8, 2010, Gayler wrote a $10,050 check (no. 0095) from Golden Sunray's account to ICON Real Estate.

The "Jayden Account" Transfers

13) On January 25, 2010, Gayler deposited a $28,000 check from the American International Insurance Company, made payable to "William Gayler," into the Jayden Account.

---

[3] The Trustee's Motion for Partial Summary Judgment includes this transaction with the Golden Sunray Check transfers. The Court distinguishes it from those transfers and treats it separately hereafter.

4

14) On January 28, 2010, Gayler withdrew $17,000 from the Jayden Account.

The "Martin Barrett" Transfers

15) On March 18, 2010, Gayler deposited a $90,925.30 cashier's check payable to "William Gayler" into TGF's bank account.

16) On March 18, 2010, Gayler wrote a check from TGF's account to Etitle in the amount of $53,620.49. The memo line specifies that the payment was for a "Loan to Gayler Fam Ed LLC."

17) On February 1, 2011, the Trustee filed an unopposed motion to extend the time to object to Gayler's discharge until May 1, 2011.

18) Gayler and the Trustee concede that May 1, 2011 was the final deadline for objecting to Gayler's discharge, although the Trustee never submitted a corresponding proposed order and thus the Court never issued an order granting the requested extension.

19) On May 10, 2012, the Trustee filed his First Amended Complaint in which he alleged his 31st Claim for Relief, which asserted Gayler's alleged violations of Section 727(a)(6)(A).

The Court also finds that the following facts are undisputed:

1) No motion to extend the time to objecting to discharge past May 1, 2011 has been filed.

2) Gayler's main bankruptcy case has not been closed.

3) No official discharge has been entered in the main bankruptcy case.

4) From the memoranda filed in connection with the current motions, it appears that at the relevant times, Gayler may have been either an owner or in control of TGF and the Jayden Account. Within the context of the Trustee's present Motion, Gayler has not disputed the Trustee's assertions that he controlled TGF and the Jayden Account. This alone can suffice for the Court to consider these assertions of fact undisputed for the purposes of the motion. See Fed. R. Civ. P. 56(e)(2). In addition, Gayler has admitted that during the relevant period,

Morpheus Enterprises, LLC was the general partner of TGF and that he was the manager of Morpheus. He has also admitted that he was the trustee of the Jayden Account during the time in question.

5) At the 341 meeting held in July 2010, the Trustee learned about the sale of furniture that resulted in receipt of the Golden Sunray Check. At the reconvened 341 meeting in September 2010, the Trustee inquired into that sale again. Moreover, in August 2010, Gayler's counsel sent the Trustee copies of statements from Nevada State Bank and charts showing the entities in which Gayler had an interest, served as a manager, or of which he was a beneficiary. In September 2010, Gayler's counsel again sent the Trustee another set of documents. These included bank account records for Golden Sunray, a partnership matrix showing Gayler's transfers and transactions from October 2007-August 2010, and a chart of related entities.

Based upon the papers and pleadings on file herein, the oral arguments of counsel, and good cause appearing, the Court makes the following conclusions of law:

1) The Trustee's 31st Claim for Relief, filed on May 10, 2012, did not meet the Rule 4004(a) period for objecting to discharge, which was extended to May 1, 2011, and is therefore untimely.

2) Rule 4004(b)(2) provides parties in interest with the ability to request an extension of the deadline for objecting to discharge after the deadline has already passed but before a discharge is entered. To receive an extension under this subsection, a party must base its objection on facts that, if they were learned post-discharge, would support a § 727(d) action for revocation, and the party must not have had knowledge of those facts in time to file an objection. The Trustee has not brought a motion to extend the time to object under Rule 4004(b)(2), however.

3) The Trustee's 31st Claim for Relief, while brought pursuant to § 727(a)(6)(A) in the First Amended Complaint, explicitly seeks revocation of Gayler's discharge, which conforms to the language of § 727(d). Because the parties believe that a revocation claim has been pleaded,

having argued the aspects of § 727(d) in their moving and opposing papers, the Court feels it is appropriate to address § 727(d) here.

4) Guided by England v. Stevens (In re Stevens), 107 B.R. 702, 706 (B.A.P. 9th Cir. 1989), Ross v. John Mitchell, Inc. (In re Dietz), 94 B.R. 637 (B.A.P. 9th Cir. 1988), aff'd 914 F.2d 161 (9th Cir. 1990), and Rule 4004(b)(2), this Court will permit the Trustee's challenge to Gayler's discharge to go forward under § 727(d), provided however, the Trustee must not have known of facts sufficient to file a complaint objecting to discharge before May 1, 2011. In addition, the Trustee is limited to bringing a complaint under § 727(d)(3).

5) The Court has elected to treat the Trustee's 31st Claim for Relief as a challenge to Gayler's under § 727(d) for the following reasons: A) the First Amended Complaint requests revocation of, as opposed to making an objection to, Gayler's discharge; B) the Trustee has not filed a motion to extend the time to object to discharge under Rule 4004(b)(2); C) in pursuing a § 727(d) claim, the Trustee will be subject to the same limitation as he would under Rule 4004(b)(2), namely that the Trustee will be barred from bringing a § 727(d) action if he had knowledge of facts sufficient to file a timely objection to discharge claim under § 727(a).

6) The Court will deem a fictional discharge entered in Gayler's bankruptcy case on May 2, 2011. This fictional discharge date was determined because it was the first day after the final deadline for the Trustee to object to Gayler's discharge, consistent with the analysis in In re Stevens and In re Dietz. Although these cases were decided prior to the effective date of FRBP 4004(b)(2), their holdings are helpful and persuasive in evaluating the Trustee's 31st Claim for Relief.

7) Because the Trustee had sufficient knowledge of the transactions involving the Golden Sunray Check to file a complaint under § 727(a)(6)(A) prior to May 1, 2011, the Trustee is precluded from challenging Gayler's discharge on those grounds. The Trustee's knowledge does not bar a challenge to the transaction involving TGF's $17,000 check to Sassicaia, however. While that transaction is grouped with the Golden Sunray Check

1  transactions, the Court cannot conclude on these motions that the Trustee had sufficient
2  knowledge of it to file an objection to discharge before May 1, 2011.

3      8) There is a genuine issue of material fact regarding the Trustee's knowledge of the
4  transfers other than those involving the Golden Sunray Check. There is also a genuine issue of
5  material fact regarding the Trustee's knowledge of TGF's $17,000 check to Sassicaia. What the
6  Trustee knew of those other transfers and when the Trustee knew of them are issues properly
7  left for trial.

8      9) An action under § 727(d)(3) necessarily involves § 727(a)(6)(A). To prevail under
9  727(a)(6)(A), the Trustee must show by a preponderance of the evidence that: 1) the Court
10 issued an order directed at Gayler; 2) the order was lawful; 3) the order was not one requiring a
11 response to a material question or to testify; and 4) Gayler refused to obey the order. Gillman v.
12 Green (In re Green), 335 B.R. 181, 183 (Bankr. D. Utah 2005).

13     10) To constitute a refusal under the Bankruptcy Code, Gayler's conduct must have
14 been willful or intentional; inadvertent or mistaken conduct is insufficient. Id.

15     11) The Court directed the Interim Order at Gayler.

16     12) The Interim Order was lawful.

17     13) The Interim Order did not require Gayler to respond to a material question or to
18 testify.

19     14) Gayler transferred, conveyed, or concealed personal property, in which he had a
20 direct or indirect interest, with a value in excess of $10,000.00, without obtaining further order
21 of the Court, in violation of the Interim Order.

22     15) He also caused entities that he owned or controlled, directly or indirectly, to transfer
23 personal property with a value in excess of $10,000.00, without obtaining further order of the
24 Court, or the majority vote of the non-related members, shareholders or partners, in violation of
25 the Interim Order.

16) The plain language of the Court's Interim Order makes clear that the funds at issue in the relevant transactions described above were subject to the Interim Order. The Court reaches this conclusion despite Gayler's argument that the funds were post-petition property, which placed them outside of the bankruptcy estate, and therefore meant that the transfer, conveyance, or concealment of such funds did not violate the Interim Order. The Court interprets the language of the Interim Order to apply to property in which Gayler had an interest during the time the Interim Order was in effect, not merely property in which Gayler had an interest when the Interim Order was entered.

17) There is a genuine issue of material fact regarding whether Gayler willfully or intentionally violated the Interim Order. The issue of Gayler's intent is an issue properly left for trial and therefore precludes the entry of summary judgment in the Trustee's favor on his 31st cause of action.

Accordingly, it is hereby **ORDERED**:

1. The Trustee's Motion for Partial Summary Judgment is **GRANTED IN PART**, in that the Interim Order was directed at Gayler, was lawful, and did not require a response to a material question or to testify, and **DENIED IN PART**, as to whether Gayler had the requisite willful or intentional mental state to establish his refusal to comply with the Interim Order.

2. Gayler's Motion for Partial Summary Judgment is **GRANTED IN PART**, as to Gayler's alleged violations of the Interim Order for transfers related to the Golden Sunray Check, except for TGF's $17,000 transfer to Sassaicia. Therefore, that part of the Trustee's 31st Claim for Relief is dismissed. It is **DENIED IN PART**, as to any other alleged violations of the Interim Order by Gayler.

3. Trial is necessary to determine whether Gayler refused to comply with the Interim Order as to all transfers other than the Golden Sunray Check transfers

and the $17,000 TGF check to Sassicaia. Trial is also necessary to determine whether the Trustee had sufficient knowledge of those other transfers to file an objection to discharge claim before May 1, 2011.

4. This matter will proceed only as a revocation of discharge under § 727(d)(3) as it relates to the alleged conduct of Gayler under that section.

Copies noticed through ECF to:

PHILLIP S. AURBACH paurbach@maclaw.com, sboggs@maclaw.com; kchandler@maclaw.com

JESSICA M. GOODEY jgoodey@maclaw.com, kbusch@maclaw.com, kjohnson@maclaw.com

DENNIS M. PRINCE dprince@princekeating.com, aebinger@princekeating.com

DAVID A. ROSENBERG darosenberg@7trustee.net, nv23@ecfcbis.com

ROBERT E. SCHUMACHER rschumacher@gordonrees.com, mogella@gordonrees.com; eescobar@gordonrees.com;sjsmith@gordonrees.com;bwalters@gordonrees.com; rhildebrand@gordonrees.com

EDGAR C. SMITH ecs@nvrelaw.com, cwatkins@nvrelaw.com;kt2@bvwlaw.com

JEFFREY R. SYLVESTER jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com; bridget@sylvesterpolednak.com

BRIAN K WALTERS bwalters@gordonrees.com, eescobar@gordonrees.com; jaanderson@gordonrees.com;mogella@gordonrees.com

BRIAN C. WHITAKER bwhitaker@woodserickson.com, mborcsanyi@woodserickson.com; cpellerin@woodserickson.com; bwood@woodserickson.com

Copies noticed through US MAIL to:

WILLIAM A. GAYLER
SYLVESTER & POLEDNAK
1731 VILLAGE CENTER CR
LAS VEGAS, NV 89134

###