1 | **Marquis Aurbach Coffing**  
Phillip S. Aurbach, Esq.  
2 | Nevada Bar No. 1501  
Jessica M. Goodey, Esq.  
3 | Nevada Bar No. 11973  
10001 Park Run Drive  
4 | Las Vegas, Nevada 89145  
Telephone: (702) 382-0711  
5 | Facsimile: (702) 382-5816  
paurbach@maclaw.com  
6 | jgoodey@maclaw.com  
    Attorneys for Chapter 7 Trustee, David A. Rosenberg  
7 |

**E-Filed: <u>February 14, 2013</u>**

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **FOR THE DISTRICT OF NEVADA**

10 | In Re:

    Case No:    BK-S-09-31603-MKN
    Chapter:    7

11 | WILLIAM GAYLER,

12 |                  Debtor.

    Adversary Proceeding No. 11-01410-MKN

13 |

14 | DAVID A. ROSENBERG, Chapter 7 Trustee,

15 |               Plaintiff,

16 |        v.

17 | 23 GOLDEN SUNRAY, L.L.C.; ALTRA VIDA, L.L.C.; APAN WINE, LIMITED LIABILITY COMPANY; AXIOS-TC, LIMITED LIABILITY COMPANY; BYRON LEBOW, as Trustee of THE BYRON LEBOW REVOCABLE FAMILY TRUST; CH. ANGELUS LLC; CH. ANGELUS II LLC; CH. ANGELUS III, LIMITED LIABILITY COMPANY; CH. PICHON I, LLC; DOMINUS M-B, L.L.C.; EDWARD BROWN; GROTH LIMITED LIABILITY COMPANY; HARLAN, LLC; ICON HOLDING COMPANY LLC; ICON REAL ESTATE COMPANIES, INC.; ICON REAL ESTATE DEVELOPMENT, LIMITED LIABILITY COMPANY; IPS II, LIMITED LIABILITY COMPANY; MARTIN BARRETT; MARYELLEN BROWN; MERITAGE-GAYLER LIMITED LIABILITY COMPANY; MORPHEUS ENTERPRISES, LLC; POLYRUS LIMITED LIABILITY COMPANY; THE GAYLER FAMILY EDUCATIONAL, LLC; WALTER LOERWALD a/k/a LEROY LOERWALD; WILLIAM A. GAYLER d/b/a ICON REAL

**<u>TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 541 AND 11 U.S.C. § 548</u>**

Date of Hearing: April 22, 2013
Time of Hearing: 1:30 p.m.

18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

ESTATE SERVICES; WILLIAM A. GAYLER, as General Partner of TGF HOLDING LIMITED PARTNERSHIP; WILLIAM A. GAYLER, as Trustee of THE GAYLER 2001 IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE JAYDEN KRISTOPHER GAYLER IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE WILLIAM A. GAYLER SEPARATE PROPERTY TRUST; WILLIAM GAYLER, individually; DOES I–X and ROE CORPORATIONS I–X, inclusive,

Defendants.

## TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO 11 U.S.C. § 541 AND 11 U.S.C. § 548

David A. Rosenberg, the duly appointed Chapter 7 Trustee in the above-entitled bankruptcy case (hereinafter "Trustee"), by and through his counsel, Phillip S. Aurbach, Esq. and Jessica M. Goodey, Esq. of Marquis Aurbach Coffing, moves this Court for Partial Summary Judgment Pursuant to 11 U.S.C. § 541 that the William A. Gayler Separate Property Trust, Morpheus, and the Gayler Family, LP, are, and have been since the time of the filing of the bankruptcy, property of the Estate.

The Trustee further moves pursuant to 11 U.S.C. § 548 on his First, Twenty-Third, Twenty-Fourth and Twenty-Fifth Claims for Relief based upon on the following:

1.     That William A. Gayler's ("Debtor" or "Gayler") made several transfers of valuable assets to TGF Holdings;

2.     That The Transfers occurred within the two-year pre-filing period;

3.     That The Transfers were assets of the Debtor;

4.     That The Transfers were infected with actual and/or constructive fraud;

5.     That The Transfers should be set aside as void; and

6.     The property interests related to The Transfers should be declared as owned by the Bankruptcy Estate ("Estate").

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

This Motion is based upon the following Memorandum of Points and Authorities, any exhibits hereto,[1] matters of public record subject to judicial notice, the pleadings on file in this case and any oral argument this Court may wish to entertain.

If this Court does not grant this motion *in toto*, the Trustee moves under FRCP 56(g) for an Order listing the facts not genuinely in dispute and treat those facts as established in this case such that the issues for trial are narrowed.

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

## I.      <u>JURISDICTION</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 157 (district courts have bankruptcy jurisdiction and can refer core proceedings to bankruptcy judges for the district).  This action is a core proceeding under 28 U.S.C. § 157(H) (proceedings to recover fraudulent conveyances) and is brought pursuant to 11 U.S.C. § 541 (identifying property of the estate) and 11 U.S.C. § 548 (trustee's powers to avoid fraudulent transfers).

## II.     <u>INTRODUCTION.</u>

Over the past 5 years, the debtor in this case has done everything in his power to avoid personal liability and defraud his creditors.  It all started in 2008, when Gayler had the first judgment entered against him.[2]  This was a smaller judgment, only $37,984.64.  While $37,984.64 is a lot of money, it was pocket change to a guy who owned an airplane and a $14 million house, jetted around the world at will and was well versed in multi-million dollar transactions.  However, at the end of 2008, Gayler was beginning to feel the effects of the market crash, and wanted to ensure that he could continue living the lifestyle to which he had become accustomed.  So, the very first thing he did in January 2009 was identify the assets he held personally, and transfer those assets to another entity to shield himself from personal liability.  One of the few assets Gayler held in his personal name prior to January 2, 2009 was 100%

_____

[1] All references to exhibits refer to the exhibits attached to the Statement of Undisputed Facts ("Undisputed Facts") filed concurrently with this Motion.

[2] <u>See</u> Undisputed Facts at ¶ 9(d).

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

interest in GFE.[3]  On January 2, 2009, Gayler executed the First Amendment to the Operating Agreement, so that GFE was then owned 99% by TGF and 1% by Apan Wine.[4]

As 2009 continued on, it became more apparent that Gayler was going to be subjected to more, much larger judgments, including a nearly $500,000 judgment by John O'Brien, a well-known attorney in town.[5]  Gayler knew that O'Brien had the means to aggressively pursue Gayler for the judgment, and Gayler knew he needed to protect himself.  As a result, beginning in May 2009, less than three months before O'Brien obtained a $477,201 judgment against Gayler,[6] Gayler began creating transfer documents that transferred his partial ownership interests in various entities to TGF,[7] again in an attempt to put his assets outside of his creditors' reach ("The Transfers").  Gayler didn't just create the transfer documents; he backdated the transfers to make it appear as if The Transfers occurred on January 2, 2009.[8]

In November 2009, Gayler was forced into bankruptcy by his creditors.[9]  In December 2009, Gayler's creditors had sought appointment of a trustee.[10]  Gayler then realized that a trustee was going to come in and start looking at The Transfers, knowing that a trustee could set aside any transfer within 2 years of his bankruptcy and that Nevada law provides a 4-year reach back period for fraudulent transfers.

As a result, in December 2009, Gayler created additional transfer documents for the entities that continued to hold assets.  However, Gayler made the face date of these documents

---

[3] Indeed, the 2009 K-1's indicated that Gayler, individually, began the year with 100% ownership.  See Undisputed Facts at ¶ 28(h).

[4] See Undisputed Facts at ¶ 28(b).

[5] See Undisputed Facts at ¶ 9(f).

[6] Id.

[7] See Undisputed Facts at ¶ 46.

[8] Id.

[9] See Undisputed Facts at ¶ 1.

[10] See Undisputed Facts at ¶ 2.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

July 1, 2005.[11]  This date would stop the Bankruptcy Trustee from setting aside the transfers as fraudulent, as they would be well beyond the two-year reach back period.  Additionally, under Nevada law, a creditor could reach back 4 years.[12]  Thus, the July 1, 2005 date puts the transfers just outside of a creditor's reach.

Gayler didn't stop there.  Gayler created at least one more transfer document in February 2010—three months after the bankruptcy was initiated.[13]  Then, as Gayler's accountant was preparing Gayler's 2009 taxes, Gayler executed two documents on October 15, 2010, trying to make them effective January 2, 2009.[14]  These documents purport to transfer TGF's 99% interest in GFE to the The William Gayler 2001 Irrevocable Trust ("2001 Irr. Trust").[15]

The end result was that Gayler and the William A. Gayler Separate Property Trust ("WAG SPT"), a self-settled revocable inter vivos trust, are left almost completely without assets.  Moreover, as a result of the various transfers, Gayler himself can't even keep the ownership structure straight.  Indeed, on his Schedule B, Gayler identifies several interests to be held by WAG SPT, even though he purported to transfer the interests from WAG SPT to TGF more than a year before preparing Schedule B.[16]

What is unquestionable though, is that Gayler made these transfers with an intent to defraud his creditors.  As such, The Transfers must be set aside as fraudulent.  Additionally, the Trustee is entitled to an Order that the following entities, and all of their assets, are property of the Estate:

    1.    WAG SPT

---

[11] See Undisputed Facts at ¶ 46.

[12] NRS 112.230.

[13] See Undisputed Facts at ¶ 46.

[14] See Undisputed Facts at ¶¶ 28(f) & (g).

[15] Id.

[16] Compare Undisputed Facts at ¶¶ 23 & 46 with Dkt. # 105 (see e.g., Martha's Vineyard, LLC, Meritage-Gayler, LLC, CH Baron, LLC, Icon Profit Sharing, LLC, Screaming Eagle II, LLC, Maya I-215, LLC, Brianhead Investors, LLC, ICON Holding Co., LLC, Screaming Eagle, LLC, One Hundred Year, LLC, Plumpjack, LLC).

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

2.      Morpheus

3.      Gayler Family, LP.

4.      TGF

5.      GFE

**III.    <u>BRIEF STATEMENT OF FACTS</u>**[17]

As set forth in the Undisputed Facts, there is no dispute that:

1.      There were no less than 43 transfers of property on January 2, 2009 to an insider, TGF ("The Transfers").[18]

2.      Gayler, individually, made 9 of The Transfers to TGF.[19]

3.      Gayler, as the trustee of WAG SPT, made 32 of The Transfers to TGF.[20]

4.      Gayler made 2 of The Transfers to TGF from (1) the "Gayler Family Trust" and (2) the Gayler Family Limited Partnership.[21]

5.      TGF is a limited partnership controlled by Gayler.[22]

6.      The general partner of TGF was Morpheus Enterprises, LLC ("Morpheus"), which was managed, controlled and 100% owned by Gayler.

7.      Gayler was insolvent at the time of The Transfers.[23]

8.      Gayler received no consideration for The Transfers.[24]

9.      The Transfers were made within two years of Gayler's bankruptcy.[25]

---

[17] For a full recitation of undisputed facts relevant to this Motion, <u>see</u> Statement of Undisputed Facts, filed concurrently with this Motion.

[18] <u>See</u> Undisputed Facts at ¶ 33.

[19] <u>See</u> Undisputed Facts at ¶ 35.

[20] <u>See</u> Undisputed Facts at ¶ 36.

[21] <u>See</u> Undisputed Facts at ¶ 37.

[22] <u>See</u> Undisputed Facts at ¶ 26.

[23] <u>See</u> Undisputed Facts at ¶ 39.

[24] <u>See</u> Undisputed Facts at ¶¶ 49–52.

[25] <u>See</u> Undisputed Facts at ¶ 38.

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

10.    Gayler retained all of the property he transferred out of his estate—he has taken the position that he is the owner of these membership interests through his control of TGF since he is the general partner.[26]

## IV.    **LEGAL ARGUMENT**

There can be no question of fact or law that assets held by Gayler personally, his self-settled inter vivos revocable trust and/or his wholly owned entities are property of the estate.  As such, the Trustee is entitled to partial summary judgment that Gayler's ownership and management interests in WAG SPT, Morpheus and Gayler Family, LP, are, and have been since the time of filing, property of the Estate.

Because there can be no question of fact or law that the interests held by Gayler individually, through his self-settled inter vivos revocable trust and/or his wholly owned entities would have been property of the Estate, if not for Gayler's fraudulent transfers, the Trustee is entitled to an order granting partial summary judgment on his First, Twenty-Third and Twenty-Fourth Claims for Relief that (1) The Transfers were transfers of "interests of the debtor;" (2) the transfers occurred within two years of Gayler's bankruptcy; (3) Gayler received no consideration for these transfers; (4) the transfers were fraudulent and should be set aside as void; and (5) his ownership interests in the entities transferred are now owned by the Estate.

### A.    **SUMMARY JUDGMENT STANDARD.**

Pursuant to Rule 7056, Fed. R. Civ. P. 56 applies in adversary proceedings.  See Fed. R. Bankr. P. 7056.  Fed. R. Civ. P. 56(a) authorizes this Court to grant summary judgment, where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Any party may move for full or partial summary judgment on specific claims and the Court must grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  This Court also has authority under Fed. R. Civ. P. 56(g) to grant partial summary judgment as to particular facts by

---

[26] See Undisputed Facts at ¶ 53.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."

**B.    THE TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT AS TO THE PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 541.**

Pursuant to Section 541(a) of the Bankruptcy Code, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*." (emphasis added).  Further, any interest which the debtor retains in trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust and recover any remaining trust funds for the benefit of creditors.  See Askanase v. Livingwell, Inc., 45 F.3d 103, 106 (5th Cir. 1995) (holding that the power to terminate or amend a trust is property of the estate).  Indeed, what comes to the bankruptcy estate is not only the property in which the debtor has an interest, but also, the powers the debtor can exercise for his own benefit over property, regardless of the title debtor may be acting under.  Id.

The law set forth in Fursman v. Ulrich (In re First protection, Inc.), 440 B.R. 821 (B.A.P. 9th Cir. 2010) applies here, where the court is asked to resolve questions of whether an interest claimed by the debtor is property of the estate as it relates to single and multi member LLC's.  In re First Protection states, "[a]lthough the question of whether an interest claimed by the debtor is 'property of the estate' is a federal question . . . bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case."  In re First Protection, Inc., 440 B.R. 821 at 828 citing Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

In re First Protection court agreed with In re Albright, 291 B.R. 538–540 (Bankr.D.Colo. 2003), which held that the debtor's membership interest in [an LLC] "became property of their estate under § 541(a)(1) by operation of law when they filed their petition."  Id. at 830.

Thus, the bankruptcy estate is entitled to the share of profits or other compensation to which the debtor member would otherwise be entitled in both a multi and single member LLC. Id. at 829 (citing to In re Albright, 291 B.R. at 540 and n.7).  Moreover, if the debtor is the sole member and manager of the LLC—a single member LLC—at the time the bankruptcy was filed,

the trustee also obtains the non-economic right(s) to control the management of the LLC. <u>Id.</u> In other words, the debtor's interest in a single member LLC, "effectively [assigns] [Gayler's] entire membership interest in the LLC to the bankruptcy estate, and the trustee obtain[s] all [Gayler's] rights, including the right to control the management of the LLC. <u>Id.</u>

Based upon 11 U.S.C. § 541 and <u>In re First Protection</u>, Gayler's ownership and management interests in the following entities are, and have been since the time of filing, property of the Estate.

### 1.    <u>The William A Gayler Separate Property Trust</u>

The WAG SPT is a self-settled, revocable, intervivos trust, in which Gayler is the Grantor, the beneficiary and the Trustee.[27]  Further, Gayler retains broad powers under the Trust, including the ability to act on behalf of the Trust, without the consent of any other trustee,[28] the absolute right to amend, restate or revoke the trust,[29] the absolute right to add or remove property from the Trust at any time,[30] and to receive distributions of trust property, "even to exhaustion of all trust property."[31]   As such, under basic tenets of bankruptcy law, WAG SPT, and all of the assets it owned, becomes property of the Estate at the time the bankruptcy was filed.[32]

### 2.    <u>Morpheus</u>

According to Gayler, Morpheus was created "to be a manager of certain [Gayler] entities…wasn't set up to own anything…[just] create some layers of protection in case of

---

[27] <u>See</u> Undisputed Facts at ¶ 13.

[28] <u>See</u> Undisputed Facts at ¶ 14.

[29] <u>Id.</u>

[30] <u>Id.</u>

[31] <u>Id.</u>

[32] Notably, Gayler failed to list WAG SPT as an asset on his bankruptcy schedules. <u>See</u> Dkt. #105. This failure is further evidence of Gayler's intent to defraud both this Court and his creditors in an attempt to hide his assets.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   lawsuits or liability."[33]  At the time of the filing of the bankruptcy, Morpheus was the general

2   partner, and therefore in control of, TGF.[34]

3         Because Morpheus is a single-member LLC, owned and managed 100% by Gayler

4   through WAG SPT,[35] pursuant to <u>In re First Protection</u>, the Trustee succeeds to all of Gayler's

5   interest and rights in Morpheus.  More specifically, as of the time of the filing of the bankruptcy,

6   the Estate owns 100% of Morpheus and all of Morpheus' assets.  Moreover, because Morpheus

7   owned, at the time of the bankruptcy, the general partnership interest in TGF, the Estate now

8   owns such general partnership interest.  As a result of the right to control Morpheus, the Trustee

9   steps into Morpheus's shoes as the general partner of TGF.

10        Therefore, the Court should find that the Trustee is the owner of WAG SPT's 100%

11  interest in Morpheus and the Trustee "steps into the shoes" of Morpheus as TGF's general

12  partner (at the time of filing) because Gayler was the sole member and manager of the LLC.

13  Gayler's bankruptcy filing effectively assigned his entire 100% ownership of Morpheus to the

14  estate.  Additionally, Gayler's managing membership interest in Morpheus should have been

15  controlled by the Estate.  As a result, the Trustee obtained all Gayler's rights, including the right

16  to control the management of Morpheus.

17        **3.**     <u>**The Gayler Family Limited Partnership.**</u>

18        Gayler failed to include the Gayler Family Limited Partnership ("GFLP") on his

19  Schedule B.[36]  However, GFLP is owned entirely by Gayler.[37]  Specifically, according to GFLP

---

[33] <u>See</u> Undisputed Facts at ¶ 33.

[34] <u>See</u> Undisputed Facts at ¶ 25.  It is notable that Gayler admits the William Gayler Irrevocable Trust is a partner in TGF, but failed to list the William Gayler Irrevocable Trust anywhere on his schedules and petitions as an asset in the appropriate section.  Furthermore, the trust referenced by Gayler in Dkt# 238 and as an owner of TGF is an incorrect and imprecise name.  It is correctly called "The William Gayler 2001 Irrevocable Trust."

[35] <u>See</u> Undisputed Facts at ¶¶ 21 & 24.

[36] <u>See</u> Undisputed Facts at ¶ 18.

[37] <u>See</u> Undisputed Facts at ¶¶ 19 & 20.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

2007–2009 K-1s, Gayler, individually, owns 1% interest and WAG SPT owns 99%.[38]  Thus, there can be no question that the interest Gayler held personally was an "interest of the debtor" and became property of the Estate at the time the bankruptcy was filed.  Additionally, as set forth in detail above, the interest held by WAG SPT is an "interest of the debtor" such that it too became property of the Estate at the time the bankruptcy was filed.

In sum, the Trustee is entitled to an order declaring that WAG SPT, Morpheus and the Gayler Family, LP, and the assets of each, including management interest, are property of the Estate and the Trustee requests the same.

## C.    FRAUDULENT TRANSFERS

Pursuant to 11 U.S.C. § 548(a)(1)(A), the trustee may avoid any transfer

(1) . . . of an interest of the debtor in property . . . that was made . . . within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted; . . .

Thus, to avoid the fraudulent transfers, the Trustee must show that (1) a transfer was made within 2 years of the bankruptcy; (2) the transfer was of an interest of the debtor; and (3) the transfer was made with an actual intent to defraud.

As shown on the Transfer Documents,[39] it is undisputed that The Transfers were transferred to TGF by Gayler and his entities within 2 years of the bankruptcy.[40]  Specifically, the Transfer Documents show the transfer date as January 2, 2009.[41]  Gayler was forced into bankruptcy November 16, 2009.[42]  Thus, the first requirement of Section 548 is met.  Therefore

---

[38] Id.

[39] See Undisputed Facts at ¶ 34.

[40] See Undisputed Facts at ¶ 38.

[41] See Undisputed Facts at ¶ 33.  Additionally, as will be shown herein, the actual transfer date was several months later, including several transfers that occurred during the bankruptcy but were backdated to reflect a transfer date of January 2, 2009.  See Undisputed Facts at ¶ 46.

[42] See Undisputed Facts at ¶ 1.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

it cannot be disputed that, the Trustee is entitled to partial summary judgment that The Transfers were transferred within two years of the bankruptcy, in violation of Section 548.

### 1.    The Transfers were of "Interests of the Debtor"

While Gayler held interests in his entities personally or via other entities, the ownership interests all filter down to Gayler individually, such that the transfers were of "interests of the debtor."

### a.    The 9 transfers from Gayler individually.

Gayler, individually, made 9 transfers to TGF.[43]

| Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration | Bate Stamped Document |
|---|---|---|---|---|---|
| 1/2/2009 | William A. Gayler | 23 Golden Sunray L.L.C. | 100.0000% | 0 | GERETY 16405 |
| 1/2/2009 | William A. Gayler | Arietta L.L.C. | 50.0000% | 0 | GERETY 16414 |
| 1/2/2009 | William A. Gayler | Brianhead Investors | 20.0000% | 0 | GERETY 6939 |
| 1/2/2009 | William A. Gayler | Ch. Angelus III, L.L.C. | 1.0000% | 0 | GERETY 16377 |
| 1/2/2009 | William A. Gayler | G.C.S., LLC | 10.0000% | 0 | GERETY 6940 |
| 1/2/2009 | William A. Gayler | ICON Holding Company L.L.C. | 1.0000% | 0 | GERETY 16412 |
| 1/2/2009 | William A. Gayler | ICON Real Estate Companies, Inc. | 100.0000% | 0 | GERETY 16408 |
| 1/2/2009 | William A. Gayler | ICON Real Estate Development L.L.C. | 99.0000% | 0 | GERETY 16410 |
| 1/2/2009 | William A. Gayler | Redstone Grille, L.L.C. | 35.0000% | 0 | GERETY 16413 |

Because these interests were held by Gayler individually prior to the transfer, there can be no question that these assets were "interests of the debtor" such that the second prong of Section 548 is met.  As such, the Trustee is entitled to partial summary judgment that the 9 transfers from Gayler individually were fraudulent, and therefore avoided.  Further, the Trustee is entitled partial summary judgment that these 9 assets are property of the Estate based upon the voided fraudulent transfer.

---

[43] See Undisputed Facts at ¶¶ 33 & 35.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**b.    The 32 transfers from WAG SPT.**

Gayler, as the trustee of WAG SPT made 32 transfers to TGF.[44]

| Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration | Bate Stamped Document |
|---|---|---|---|---|---|
| 1/2/2009 | WAG Separate Prop Trust | Caine Five, L.L.C. | 5.0000% | 0 | GERETY 6941 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Angelus II L.L.C. | 7.5000% | 0 | GERETY 16375 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Angelus ii L.L.C. | 7.5000% | 0 | GERETY 16376 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Angelus IV, L.L.C. | 15.0000% | 0 | GERETY 16379 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Angelus Partners L.L.C. | 90.0000% | 0 | GERETY 16380 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Baron L.L.C. | 12.7894% | 0 | GERETY 16381 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Montrose L.L.C. | 37.5000% | 0 | GERETY 16382 |
| 1/2/2009 | WAG Separate Prop Trust | Ch. Pichon L.L.C. | 22.5000% | 0 | GERETY 16383 |
| 1/2/2009 | WAG Separate Prop Trust | Charles Krug L.L.C. | 22.5000% | 0 | GERETY 16392 |
| 1/2/2009 | WAG Separate Prop Trust | Diamante Rose L.L.C. | 4.2500% | 0 | GERETY 16384 |
| 1/2/2009 | WAG Separate Prop Trust | Goven Cross L.L.C. | 100.0000% | 0 | GERETY 16386 |
| 1/2/2009 | WAG Separate Prop Trust | Harlan L.L.C. | 50.0000% | 0 | GERETY 16387 |
| 1/2/2009 | WAG Separate Prop Trust | ICON Holding Company L.L.C. | 99.0000% | 0 | GERETY 16411 |
| 1/2/2009 | WAG Separate Prop Trust | ICON Profit Sharing L.L.C. | 35.0000% | 0 | GERETY 16388 |
| 1/2/2009 | WAG Separate Prop Trust | IPS 4 L.L.C. | 50.0000% | 0 | GERETY 16391 |
| 1/2/2009 | WAG Separate Prop Trust | IPS II L.L.C. | 60.0000% | 0 | GERETY 16389 |
| 1/2/2009 | WAG Separate Prop Trust | IPS III L.L.C. | 50.0000% | 0 | GERETY 16390 |
| 1/2/2009 | WAG Separate Prop Trust | Martha's Vineyard L.L.C. | 100.0000% | 0 | GERETY 16406 |
| 1/2/2009 | WAG Separate Prop Trust | Maya I-215 L.L.C. | 1 Share | 0 | GERETY 16409 |
| 1/2/2009 | WAG Separate Prop Trust | Meritage-Gayler L.L.C. | 61.5400% | 0 | GERETY 16407 |
| 1/2/2009 | WAG Separate Prop Trust | One Hundred Year L.L.C. | 24.2986% | 0 | GERETY 16393 |
| 1/2/2009 | WAG Separate Prop Trust | Plump Jack L.L.C. | 100.0000% | 0 | GERETY 16394 |
| 1/2/2009 | WAG Separate Prop Trust | Polyrus L.L.C. | 20.0000% | 0 | GERETY 16395 |
| 1/2/2009 | WAG Separate Prop Trust | Screaming Eagle II L.L.C. | 60.0000% | 0 | GERETY 16397 |

---

[44] See Undisputed Facts at ¶¶ 33 & 36.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

| Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration | Bate Stamped Document |
|---|---|---|---|---|---|
| 1/2/2009 | WAG Separate Prop Trust | Screaming Eagle L.L.C. | 56.2500% | 0 | GERETY 16396 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset I L.L.C. | 4.5600% | 0 | GERETY 16398 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset II L.L.C. | 6.5000% | 0 | GERETY 16399 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset III L.L.C. | 35.5000% | 0 | GERETY 16400 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset IV L.L.C. | 4.0000% | 0 | GERETY 16401 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset V L.L.C. | 4.0000% | 0 | GERETY 16402 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset VI L.L.C. | 9.0000% | 0 | GERETY 16403 |
| 1/2/2009 | WAG Separate Prop Trust | Sunset VII L.L.C. | 12.5000% | 0 | GERETY 16404 |

WAG SPT is a self-settled, revocable, intervivos trust, in which Gayler is the Grantor, the beneficiary and the Trustee.[45]  Further, Gayler retains broad powers under the Trust, including the ability to act on behalf of the Trust, without the consent of any other trustee,[46] the absolute right to amend, restate or revoke the trust,[47] the absolute right to add or remove property from the Trust at any time,[48] and to receive distributions of trust property, "even to exhaustion of all trust property."[49]  As such, pursuant to 11 U.S.C. § 541, WAG SPT is an "interest of the debtor" thereby establishing the second prong of Section 548.  Thus, the Trustee is entitled to partial summary judgment that the 32 transfers from WAG SPT were fraudulent and therefore avoided. Additionally, the Trustee is entitled to partial summary judgment that WAG SPT, and all of the interests it holds after the avoidance of the transfers, is property of the Estate pursuant to 11 U.S.C. § 541.

---

[45] See Undisputed Facts at ¶ 13.

[46] See Undisputed Facts at ¶ 14.

[47] Id.

[48] Id.

[49] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### c.    The Transfer from Gayler Family Limited Partnership

| Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration | Bate Stamped Document |
|---|---|---|---|---|---|
| 1/2/2009 | Gayler Family LP | Groth L.L.C. | 10.6250% | | GERETY 16385 |

Gayler failed to include the Gayler Family Limited Partnership ("GFLP") on his Schedule B.[50] However, GFLP is owned entirely by Gayler.[51] Specifically, according to GFLP 2007–2009 K-1s, Gayler, individually, owns 1% interest and WAG SPT owns 99%.[52] There can be no question that the interest Gayler held personally was an "interest of the debtor." Additionally, as set forth in detail above, the interest held by WAG SPT is an "interest of the debtor" such that it becomes property of the Estate. As such, the second prong of Section 548—that the transfer be of an "interest of the debtor"—is met as it relates to this transfer.

### d.    The Transfer from the "Gayler Family Trust"

| Transfer Date | Name Gayler Held Interest In | Entity | % Transferred to TGF | Consideration | Bate Stamped Document |
|---|---|---|---|---|---|
| 1/2/2009 | Gayler Family Trust | Dominus M-B LLC | 40.0000% | 0 | GERETY 6942 |

According to the Transfer Document, Gayler's interest in Dominus was transferred from the "Gayler Family Trust" to TGF. However, there is no evidence that the "Gayler Family Trust" exists. Gayler does not list "Gayler Family Trust" on his Schedule B.[53] Additionally, Gayler's own estate planning attorney was not aware of a trust agreement for the "Gayler Family Trust."[54] Instead, "Gayler Family Trust" appears to refer to WAG SPT. Indeed, the Dominus M-B, LLC Operating Agreement indicates that Gayler's interest was held by WAG SPT.[55] Moreover,

---

[50] See Undisputed Facts at ¶ 18.

[51] See Undisputed Facts at ¶¶ 19 & 20.

[52] Id.

[53] See Undisputed Facts at ¶ 18.

[54] See Undisputed Facts at ¶ 17.

[55] See Undisputed Facts at ¶ 29.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

1    Gayler never provided any documents to the manager of Dominus indicating that WAG SPT's

2    interest was transferred until 2009, when the interest was transferred to TGF.[56]  Additionally, in a

3    letter to his accountant, Gayler identifies Dominus as one of the interests being owned by the

4    WAG SPT, which is to be transferred to TGF.[57]  In any event, Gayler claimed the revenue from

5    Dominus on his personal taxes as a pass through, just as he had done with WAG SPT.[58]  Thus,

6    there can be no question that Gayler's interest in Dominus was an "interest of the debtor."  Thus,

7    the second prong of Section 548 is met as it relates to this transfer.

## 2.    Actual Fraud—Intent to Hinder, Delay or Defraud.

9        Gayler admitted to intending to defraud his creditors through his elaborate entity

10   scheme.[59]  Specifically, at one point, Gayler had 105 entities.[60]  His Schedule B lists 69 of them.

11   (Dkt# 105).  Most of the entities listed Emily Bruschke, Gayler's former girlfriend, as resident

12   agent because, in Gayler's own words, "she's kind of unfindable, **which is my intention**….[s]he

13   flutters in and out of my life.  I don't always know where she's at."[61]  When deposed, Emily

14   Bruschke testified she "didn't even know what a registered agent was" and that she "was only

15   being assigned as a registered agent because [she] was unfindable."[62]    Thus, Gayler's

16   admissions, taken together with his elaborate transfer scheme, paint a clear picture of his intent

17   to defraud his creditors.  In the event the Court does not believe Gayler's admission is sufficient,

18   the Court can look to the badges of fraud to infer intent.

---

[56] See Undisputed Facts at ¶ 30, specifically **Exhibit 17** at ¶9.

[57] See Undisputed Facts at ¶31, specifically **Exhibit 18**.

[58] See Undisputed Facts at ¶¶ 15 & 32.

[59] See Undisputed Facts at ¶¶ 10 & 11.

[60] See Undisputed Facts at ¶ 10.

[61] See Undisputed Facts at ¶ 11.

[62] See Undisputed Facts at ¶ 12.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### a.    The Badges of Fraud.

Because actual fraud can be hard to prove directly, intent can be inferred if the Trustee can show some of the more common circumstantial indicia of fraudulent intent at the time of the transfers, otherwise known as the badges of fraud: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer; and (5) retention by the debtor of the property involved in the putative transfer.  In re Acequia, Inc., 34 F.3d 800 (9th Cir. 1994).  The Ninth Circuit has held that the presence of a single badge of fraud may spur mere suspicion but the confluence of several can constitute conclusive evidence of actual intent to defraud.  Id. Thus, in the event the Court is not satisfied with Gayler's admission of his intent to defraud his creditors, the Court can look to the badges of fraud to infer intent.

Here, Gayler met all of the badges of fraud, such that conclusive evidence of actual intent to defraud is established.

### (1)    Actual or Threatened Litigation

Gayler testified that he had 3 or 4 lawsuits,[63] including one that went to a $360,000 judgment against him, just before the transfer.[64]  Indeed, Gayler had no less than six lawsuits filed against him between 2005 and 2009.[65]  Thus, the first badge of fraud—actual or threatened litigation—has been met.

### (2)    Substantially All of Debtor's Property

Additionally, Gayler transferred substantially all of his assets that had value to TGF (his ownership interests in 43 of 69 entities).[66]  Notably, these 43 entities held the majority of his assets.  For example, from the sale proceeds of land owned by Sunset V, LLC, Axios-TC, LLC's

---

[63] See Undisputed Facts at ¶ 8.

[64] Id.

[65] See Undisputed Facts at ¶ 9.

[66] See Undisputed Facts at ¶ 33.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

(one of Gayler's assets)[67] is expected to receive a distribution of approximately $18,371.19, representing its 5% ownership interest in Sunset V.[68]  Additionally, TGF is expected to receive a distribution of approximately $15,168.95 for TGF's 4% ownership interest in Sunset V.[69]  Finally, Meritage-Gayler, LLC is expected to receive a distribution of approximately  $3,202.34 for its 1% interest in Sunset V.[70]

Additionally, Gayler transferred his 40% interest in Dominus M-B, LLC to TGF,[71] and approximately $430,000 (representing TGF's 40% interest) has been distributed with the Trustee pending resolution of this case.[72]

Likewise, Meritage-Gayler, LLC and ICON Profit Sharing Plan, both of which are owned at least in part by TGF, are expected to receive a distribution from the sale of land owned by Sunset II, in the approximate amount of $25,000.[73]  Thus, based upon just these three examples, Gayler transferred nearly half a million dollars of assets to TGF.  As such, Gayler met the second badge of fraud—the transfer of substantially all of the debtor's property.

### (3)    Insolvency at time of transfer.

Likewise, Gayler met the third badge of fraud—insolvency or other unmanageable indebtedness on behalf of the debtor.  Specifically, Gayler admitted that he was concerned about the potential liabilities in the declining real estate market because "the expenses on all these partnerships, you know, can be enormous.  And I did not want to have the responsibility individually."[74]  Gayler also testified in his 2004 exam that he started reading a lot of books at

---

[67] See Dkt# 105 at 18.

[68] See Undisputed Facts at ¶ 47, specifically **Exhibit 17** at ¶ 4.

[69] See Undisputed Facts at ¶ 47, specifically **Exhibit 17** at ¶ 5.

[70] See Undisputed Facts at ¶ 47, specifically **Exhibit 17** at ¶ 6..

[71] See Undisputed Facts at ¶ 33, specifically, **Exhibit 19** at GERETY 6942.

[72] See Undisputed Facts at ¶ 47, specifically **Exhibit 17** at ¶ 10.

[73] See Undisputed Facts at ¶ 48.

[74] See Undisputed Facts at ¶ 7.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

the end of 2008 and got concerned that he would not have enough cash to meet the obligations of his entities.[75]  Gayler thought that transferring these entities to TGF would relieve him from responsibility and for the liability as well as allow him to do some estate planning.[76]  Finally, Gayler's Bankruptcy Schedules (Dkt #105), filed no more 10 months after the transfers,[77] lists, at page 8 of 85 in his Summary of Schedules, assets worth one million dollars and liabilities of twenty six million dollars.[78]

| Total Number of Sheets of ALL Schedules | 55 | |
| Total Assets | 1,054,200.00 | |
| Total Liabilities | 26,036,183.86 | |

As such, the Trustee established the third badge of fraud—insolvency at the time of the transfer—such that actual intent to defraud can be inferred.

### (4)    Transfer to an Insider

Pursuant to 11 U.S.C. § 101(31)(A), an "insider" includes a partnership in which the debtor is a general partner and a corporation of which the debtor is a directors, officer, or person in control.  Here, there can be no question that there is an insider relationship between Gayler and TGF.  TGF is a limited partnership.[79]  At the time of the bankruptcy and at the time of the transfers, Morpheus was TGF's general partner.[80]  Moreover, Gayler, now claims the general partner of TGF.[81]

---

[75] See Undisputed Facts at ¶ 6.

[76] See Undisputed Facts at ¶ 40.

[77]   In fact, the time between the transfers and the bankruptcy is between 0-6 months, based upon the backdated transfer documents, as discussed infra at §IV.C.2.b. ("The Backdated Transfers").

[78] See Undisputed Facts at ¶ 39.

[79] See Undisputed Facts at ¶ 26.

[80] See Dkt# 105, pg. 20 (Morpheus listed as the general partner of TGF Holding); see also Undisputed Facts at ¶ 23.

[81] See Undisputed Facts at ¶ 53.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

Most tellingly, Gayler was the only person involved in executing the transfer documents. Indeed, Gayler signed the documents as the Managing Member of Morpheus, which was also the Managing Member of TGF.[82]



Likewise, GFE, which is currently owned primarily by the 2001 Irr. Trust,[83] holds a 79% interest in TGF.[84]  The remaining 20% of TGF is held by Gayler's children.[85]  While Gayler has created a convoluted and intertwined ownership structure, all in an effort to defraud his creditors, it is apparent that the common link is Gayler.  Thus, the fourth badge of fraud—a special relationship between the transferor and transferee—has been met.

### (5)    Gayler Retained the Property

Finally, Gayler retained all of the property he transferred out of his estate.[86]  Gayler has stated that he is the owner of these membership interests through his control of TGF because he is the 100% owner of Morpheus which was the general partner of TGF.[87]  At the time of The Transfers to TGF, Gayler was the manager and in control of Morpheus, the general partner of

---

[82] See Undisputed Facts at ¶ 34, specifically **Exhibit 19**.

[83] See Undisputed Facts at ¶¶ 28(f)–(h).

[84] See Undisputed Facts at ¶ 27(f).

[85] Id.

[86] See Undisputed Facts at ¶ 53.

[87] Id.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

TGF Holdings.[88]   Currently, Gayler, individually, is the general partner of TGF Holdings.[89] Morpheus, which was owned 100% by Gayler through WAG SPT,[90] was the general partner of TGF.[91]   Thus, Gayler has retained control over all 43 property interests he transferred to entities 10 months prior to his bankruptcy.

Additionally, as set forth above, Gayler maintains control of TGF and its assets through Morpheus, GFE and his children.  For example and by way of illustration only, assume Plump Jack, LLC holds real property which is set to sell for $100,000.  TGF would then be scheduled to receive $100,000 (100% interest in Plump Jack).  Of TGF's $100,000, Morpheus would receive $1,000 (1% in TGF), GFE would receive $79,000 (79% of TGF) and each of the children would receive $5,000 (5% each in TGF).  Gayler would then receive $1,000 from Morpheus (100% of Morpheus).  Gayler, through the 2001 Irr. Trust, would also receive $78,210 from GFE (99% of TGF).  Thus, even assuming Gayler wouldn't get any of the funds allegedly for his children (which is unlikely given his past testimony that his 7 year old son "takes care of his daddy")[92], he would still receive $79,210 of the $100,000 sale proceeds, all outside of the bankruptcy court.

Moreover, Gayler maintains the ability to dictate such distributions for each of these entities—Gayler, individually, purports to be Manager of TGF.  Additionally, Gayler, through the 2001 Irr. Trust, is the majority owner of GFE.  As such, all control remains with Gayler and all of the funds will eventually trickle down to Gayler—all outside of the bankruptcy proceedings.  This is further supported by Gayler's recent actions related to Apan Wine.  As this Court will recall, this Court declared that Gayler's interests Apan Wine, LLC is property of the Estate.[93]   Despite this unequivocal order, Gayler insists that he individually, is the manager of

---

[88] See Undisputed Facts at ¶ 21 & 23.

[89] See Undisputed Facts at ¶ 53.

[90] See Undisputed Facts at ¶ 24.

[91] See Undisputed Facts at ¶ 23.

[92] See Undisputed Facts at ¶ 54.

[93] See Undisputed Facts at ¶ 55.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Apan Wine and that the Trustee is "irrelevant."[94]  Even in the face of a clear order, Gayler makes it abundantly clear that he believes himself to be immune to this Court's reach and that he can continue managing these entities.  Thus, the fifth badge of fraud—the debtor's retention of the property—has been met.

Because all five of the badges of fraud have been met, this Court can infer Gayler's actual intent to defraud his creditors, such that the second prong of Section 548 has been met.

### b.    The Backdated Transfers.

In addition to Gayler's own admission of his intent to defraud his creditors AND meeting all the badges of fraud, which, when construed independently or together, is more than sufficient evidence to establish intent, Gayler cannot escape the fact that he backdated documents.  As this Court will remember, Gayler was instructed to provide his work computers for imaging in a related state court case.[95]  Knowing exactly what would be found on those computers, Gayler fought it every step of the way, including failing to provide the computer as instructed by the Court.[96]  Indeed, Quivx, the company hired to obtain the forensic image, appeared, as ordered, at Gayler's office, and was advised that the computers would not be provided.[97]  Gayler was then taken back to court on allegations of civil and criminal contempt.[98]  While Gayler was found not have to have committed criminal contempt, he was ordered to appear on the civil contempt charges.[99]  Eventually, Gayler provided a single computer for imaging.[100]  Notably, it appears

---

[94] See Undisputed Facts at ¶ 56.

[95] See Undisputed Facts at ¶ 41.

[96] See Undisputed Facts at ¶ 42, specifically **Exhibit 21** at ¶¶ 11 & 12.

[97] Id.

[98] See Undisputed Facts at ¶ 43.

[99] Id.

[100] See Undisputed Facts at ¶ 45, specifically **Exhibit 21** at ¶¶ 13 & 14.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Gayler provided his assistant, Gloria Buonaccorsi's computer, as the file location of the documents indicate that the user was "Gloria."[101]

On March 5, 2012, this Court allowed the Trustee to access the image obtained in the state court case. (Dkt#438). As a result, Quivx performed a search of various terms, including, but not limited to "TGF."[102] What can be seen from the documents obtained by Quivx is indicative of Gayler's intent to defraud his creditors.

Specifically, Quivx was able to identify the Transfer Documents that had a face date of January 2, 2009 (which were apparently executed and provided to Gayler's account, Gerety).[103] Quivx was also able to identify the creation date of each of these documents.[104] Tellingly, the majority of these documents were created in May and June 2009.[105] Thus, the documents were backdated to a date 6 months before they were actually created.

Additionally, Quivx was able to locate an additional 9 documents that were created in December 2009, but had a face date of July 1, 2005.[106] Thus, Gayler attempted to backdate these transfers to 4 years earlier. This date would have allowed Gayler to circumvent both state and bankruptcy time limitations on fraudulent transfers.

As can be seen above, Gayler met, not one, not two, but ***ALL FIVE*** badges of fraud. Based upon In re Acequia, Inc., this alone is sufficient for the Court to find conclusive evidence of Gayler's intent to defraud his creditors. However, the Court has even more evidence to support the finding of actual fraud—Gayler's clear backdating of documents, which can only be construed as Gayler's attempt to avoid the bankruptcy estate. As such, the Trustee is entitled to

---

[101] See Undisputed Facts at ¶ 46, specifically **Exhibit 21-C** at QUIVX-TGF 0001–0002.

[102] See Undisputed Facts at ¶ 46, specifically **Exhibit 21** at ¶ 23.

[103] See Undisputed Facts at ¶ 46, specifically **Exhibit 21** at ¶¶ 26–30.

[104] See Undisputed Facts at ¶ 46, specifically **Exhibit 21** at ¶¶ 29 & 30 and **Exhibit 21-C** at QUIVX-TGF 0001–0002.

[105] Id.

[106] Id.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    summary judgment as to the third element of Section 548—that the transfers were made with an

2    actual intent to defraud the creditors.

3        Because the Trustee has established all three prongs of Section 548, the Trustee is

4    entitled to partial summary judgment that The Transfers are fraudulent and therefore voided.

### 3.  <u>Constructive Fraud.</u>

6        In the event the Court does not find actual intent to defraud, the Court can still avoid the

7    transfers based upon constructive fraud.  Specifically, pursuant to 11 U.S.C. § 548(a)(1)(B), a

8    transfer must be avoided when the debtor:

> (i) received less than a reasonably equivalent value in exchange for such transfer … and

> (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; …

> (II) [n/a]

> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

17        Thus, to prove a constructive fraudulent transfer, the trustee must show (1) A transfer of

18   the debtor's property;[107] (2) that the transfer was made within 2 years of the bankruptcy

19   petition;[108] (3) that the debtor received less than a reasonably equivalent value in exchange for

20   the transfer; and (4) that the debtor was insolvent at the time of the transfer.[109]

21        As set forth above, there is no dispute that Gayler attempted to transfer his interests in

22   various entities, and such transfers were made 10 months prior to his bankruptcy.  Moreover,

23   Gayler testified in his Rule 2004 Examination that he gifted these interests into TGF.[110]

---

[107] The transfer is undisputed as shown above.

[108] The transfers were made within 10 months of the bankruptcy petition as shown above.

[109] As explained above, Gayler's Summary of Schedules shows Gayler's $25,000,000 negative net worth.

[110] <u>See</u> Undisputed Facts at ¶ 49.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Specifically, when answering questions in his 2004 Examination regarding The Transfers and TGF's tax return, Gayler stated that there was no cash involved and that "I contributed all—or the separate property trust or whatever entity it was contributed that property as a gift to TGF."[111]   This is further supported by a document provided by Gayler's accountant, in which Gayler requested to have the WAG SPT's ownership interests in various entities to TGF.[112]   The handwriting on this memo, presumably by the accountant, indicates that the WAG SPT's transfer of its interests in the entities was "gifted" to TGF.[113]   Further, TGF's bank account was not opened until 11 months after The Transfers occurred.[114]   Even so, the TGF account does not reflect any payments for any of the interests transferred to TGF through March 2010.[115]   As such, the elements for constructive fraud have been met, such that The Transfers must be avoided.

### D.    TGF IS PROPERTY OF THE ESTATE.

Gayler's scheme to transfer all of his interests to TGF started with the transfer of his ownership interest in TGF.   Specifically, TGF is a limited partnership, listed on Gayler's schedules as being owned 1% by Morpheus and 99% by the 2001 Irr. Trust.   (Dkt# 105). However, according to the documents provided by Gayler's accountant, Gayler's schedules are incorrect.[116]   Pursuant to the Limited Partnership Agreement, TGF was formed in 2005 with Morpheus having a 1% General Partnership Interest and Gayler, individually, having a 99% Limited Partnership Interest.[117]   In December 2005, Gayler appears to have transferred his 99%

---

[111] Id.

[112] See Undisputed Facts at ¶ 34, specifically **Exhibit 18** (GERETY 7607).  While this document is dated January 2, 2009, the Trustee believes this document to also be backdated, as it refers to many of the same transfers already demonstrated to have been backdated.

[113] Id.

[114] See Undisputed Facts at ¶ 51.

[115] See Undisputed Facts at ¶ 52.

[116] See Undisputed Facts at ¶ 27, specifically **Exhibit 15**.

[117] See Undisputed Facts at ¶ 26(a).

interest to The 2003 Irr. Trust.[118]   Sometime between December 2005 and December 2006, Gayler transferred the 99% interest from The 2003 Irr. Trust to WAG SPT, as the 2007 K-1's provide that the WAG SPT held a 99% interest in TGF for the entire year.[119]   Likewise, the 2008 K-1's indicate that the WAG SPT held a 99% interest in TGF for the entire year.[120]   The 2009 K-1's indicate that WAG SPT began the year with the 99% interest, but such interest was transferred on May 28, 2009.[121]   More specifically, on May 28, 2009, the WAG SPT transferred its 99% limited partnership interest in TGF to GFE (79%) and his children (5% each).[122]   Thus, as set forth above, the transfer of the 99% ownership interest of TGF must avoided as fraudulent. As such, the Trustee is entitled to an Order that 99% of TGF is owned by WAG SPT (which is property of the Estate, as set forth above) and 1% by Morpheus (which is property of the Estate, as set forth above in Section IV(B)(1)).   Therefore, TGF, and all of its assets, are property of the Estate.

### E.    GAYLER FAMILY EDUCATIONAL LLC IS PROPERTY OF THE ESTATE.

Gayler listed Gayler Family Educational, LLC ("GFE") on his schedule B as being owned 100% by TGF.[123]   However, that is incorrect according to the documents provided by his accountant.[124]   Specifically, on January 1, 2009, GFE was originally 100% owned by WAG SPT.[125]   On January 2, 2009, Gayler executed a First Amendment to the Operating Agreement of GFE indicating that the members of GFE were TGF with a 99% ownership interest and Apan

---

[118] See Undisputed Facts at ¶ 26(b).

[119] See Undisputed Facts at ¶ 26(c).

[120] See Undisputed Facts at ¶ 26(d).

[121] See Undisputed Facts at ¶¶ 26(e) & (f).

[122] Id.

[123] See Undisputed Facts at ¶ 28(d).

[124] See Undisputed Facts at ¶¶ 28(a)–(c).

[125] See Undisputed Facts at ¶ 28(a).

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Wine with a 1% ownership interest.[126]  Then, on April 15, 2009, Gayler executed a Second Amendment to the Operating Agreement whereby his daughter, Brianna Gayler, obtained Apan Wine's 1% interest in GFE.[127]  Thus, at the time of the bankruptcy, GFE was owned by 99% by TGF and 1% by Brianna Gayler.  As with the other transfers, WAG SPT's transfer of its 100% interest in GFE to TGF (Gayler's insider) and Brianna Gayler (Gayler's daughter), which was less than 2 years prior to the bankruptcy, was fraudulent and must be set aside.[128]  Thus, WAG SPT must be declared to be the 100% owner of GFE at the time of the bankruptcy.  Because WAG SPT is property of the Estate,[129] GFE is also property of the Estate.  Alternatively, as set forth above, TGF was property of the Estate at the time of the filing of the bankruptcy.[130]  Thus, even if the transfer of GFE from WAG SPT to TGF was not fraudulent, no less than 99% of GFE became property of the Estate at the time of the filing of the bankruptcy.  In any event, the Trustee is entitled to an order declaring either that (1) 100% of GFE is owned by the Estate as a result of the avoidance of fraudulent transfers; or (2) 99% of GFE is owned by the Estate because TGF, which holds 99% of GFE, is property of the Estate.

## V.    CONCLUSION

The Trustee respectfully requests an Order from this Court declaring that WAG SPT, Morpheus and Gayler Family, LP are property of the Estate, and have been since the time of the filing of the Involuntary Petition, based upon Gayler's personal ownership interest in the same.

Moreover, based upon the exhibits referenced herein and Gayler's testimony, it cannot be questioned that Gayler transferred his ownership interests in numerous entities within two years before his Involuntary Petition.  These transfers were made with the actual intent to hinder and delay creditors as well as to constructively defraud his creditors of his assets.  The majority of

---

[126] See Undisputed Facts at ¶ 28(b).

[127] See Undisputed Facts at ¶ 28(c).

[128] See infra at § IV.C.

[129] See supra at § IV.B.1.

[130] See supra at § IV.D.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

transfers were made by Gayler or WAG SPT.  No consideration was paid for The Transfers.  The Trustee respectfully requests that this Court enter an order granting partial summary judgment on his First, Twenty-Third, Twenty-Fourth and Twenty-Fifth Claims for Relief that (1) The Transfers of valuable assets to TGF Holdings were interests of the Debtor; (2) The Transfers occurred within the two-year pre-filing period; (3) The Transfers were infected with actual and/or constructive fraud; (4) The Transfers should be set aside as void; and (5) the property interests related to The Transfers should be declared as owned by the Estate.[131]  The Trustee further requests an Order declaring that TGF in its entirety is property of the Estate, based upon the fraudulent transfer from WAG SPT.  Finally, the Trustee requests an Order declaring that GFE, is property of the Estate based upon its ownership by TGF and/or the fraudulent transfer from WAG SPT was fraudulent.

If this Court does not grant this motion *in toto*, the Trustee respectfully requests under FRCP 56(g) that this Court list the facts not genuinely in dispute and treat those facts as established in this case such that the issues for trial are narrowed.

Dated this 14th day of February, 2013.

MARQUIS AURBACH COFFING

By /s/ Jessica M. Goodey
　　Phillip S. Aurbach, Esq.
　　Nevada Bar No. 1501
　　Jessica M. Goodey, Esq.
　　Nevada Bar No. 11973
　　10001 Park Run Drive
　　Las Vegas, Nevada  89145
　　Attorney(s) for Chapter 7 Trustee, David A.
　　Rosenberg

---

[131] The Trustee recognizes that certain creditors have sought relief from the automatic stay to proceed with an arbitration to determine whether or not Gayler, pre-bankruptcy, sold his interests in Ch. Angelus and Ch. Angelus II.  In addition, the arbitration will also determine whether Gayler's actions, pre-bankruptcy, constitute fraud.  If so, it is the Trustee's understanding that part of the relief sought would serve to disgorge Gayler of any and all membership interests he claims in Ch. Angelus, LLC and Ch. Angelus II, LLC, including the interests held by Gayler through Ch. Pichon, LLC, Groth, LLC and Harlan, LLC.  The Trustee further recognizes that these creditors have indicated in the Motion to Lift Stay that they wish to arbitrate the ownership of Gayler's membership interests in Ch. Angelus and Ch. Angelus II (including those interests held through other entities) before this Court declares those interests to be or not be property of the Estate.  Thus, in the event the arbitrator does not find Gayler to have sold or to be disgorged of his interests in Ch. Angelus and Ch. Angelus II, such interests must be declared to be property of the Estate.

MAC:12089-001 1876428_5 2/14/2013 3:46 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816