1  **Marquis Aurbach Coffing**                    E-Filed: <u>February 26, 2013</u>
   Phillip S. Aurbach, Esq.
2  Nevada Bar No. 1501
   Jessica M. Goodey, Esq.
3  Nevada Bar No. 11973
   10001 Park Run Drive
4  Las Vegas, Nevada 89145
   Telephone: (702) 382-0711
5  Facsimile: (702) 382-5816
   paurbach@maclaw.com
6  jgoodey@maclaw.com
     Attorneys for Chapter 7 Bankruptcy
7    Trustee, David A. Rosenberg

8             **UNITED STATES BANKRUPTCY COURT**

9             **FOR THE DISTRICT OF NEVADA**

10  In Re:                                    Case No.:      BK-S-09-31603-MKN
                                              Chapter:       7
11  WILLIAM GAYLER,

12              Debtor.

13  _____

14  DAVID A. ROSENBERG, Chapter 7 Trustee,    Adversary Proceeding No. 11-01410-MKN

15              Plaintiff,

16      v.

17  23 GOLDEN SUNRAY, L.L.C.; ALTRA VIDA,     **TRUSTEE'S OPPOSITION TO**
    L.L.C.; APAN WINE, LIMITED LIABILITY      **DEFENDANT WALTER LEROY**
18  COMPANY; AXIOS-TC, LIMITED                **LOERWALD'S MOTION FOR**
    LIABILITY COMPANY; BYRON LEBOW, as        **JUDGMENT ON THE PLEADINGS, OR**
19  Trustee of THE BYRON LEBOW                **IN THE ALTERNATIVE, FOR FULL OR**
    REVOCABLE FAMILY TRUST; CH.               **PARTIAL SUMMARY JUDGMENT ON**
20  ANGELUS LLC; CH. ANGELUS II LLC; CH.      **THE PLAINTIFF'S FIRST AMENDED**
    ANGELUS III, LIMITED LIABILITY            **COMPLAINT, AND THE TWENTY-**
21  COMPANY; CH. PICHON I, LLC; DOMINUS       **EIGHTH, TWENTY-NINTH AND**
    M-B, L.L.C.; EDWARD BROWN; GROTH          **THIRTIETH CLAIMS FOR RELIEF**
22  LIMITED LIABILITY COMPANY; HARLAN,
    LLC; ICON HOLDING COMPANY LLC;
23  ICON REAL ESTATE COMPANIES, INC.;
    ICON REAL ESTATE DEVELOPMENT,
24  LIMITED LIABILITY COMPANY; IPS II,
    LIMITED LIABILITY COMPANY; MARTIN
25  BARRETT; MARYELLEN BROWN;                 Hearing Date:  April 22, 2013
    MERITAGE-GAYLER LIMITED LIABILITY         Hearing Time:  1:30 p.m.
26  COMPANY; MORPHEUS ENTERPRISES,
    LLC; POLYRUS LIMITED LIABILITY
27  COMPANY; THE GAYLER FAMILY
    EDUCATIONAL, LLC; WALTER
28  LOERWALD a/k/a LEROY LOERWALD;

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

WILLIAM A. GAYLER d/b/a ICON REAL ESTATE SERVICES; WILLIAM A. GAYLER, as General Partner of TGF HOLDING LIMITED PARTNERSHIP; WILLIAM A. GAYLER, as Trustee of THE GAYLER 2001 IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE JAYDEN KRISTOPHER GAYLER IRREVOCABLE TRUST; WILLIAM A. GAYLER, as Trustee of THE WILLIAM A. GAYLER SEPARATE PROPERTY TRUST; WILLIAM GAYLER, individually; DOES I–X and ROE CORPORATIONS I–X, inclusive,

Defendants.

**TRUSTEE'S OPPOSITION TO DEFENDANT WALTER LEROY LOERWALD'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR FULL OR PARTIAL SUMMARY JUDGMENT ON THE PLAINTIFF'S FIRST AMENDED COMPLAINT, AND THE TWENTY-EIGHTH, TWENTY-NINTH AND THIRTIETH CLAIMS FOR RELIEF**

David A. Rosenberg, the duly appointed Chapter 7 Trustee in the above-entitled bankruptcy case (hereinafter "Trustee"), by and through his counsel, Phillip S. Aurbach, Esq. and Jessica M. Goodey, Esq. of Marquis Aurbach Coffing, hereby opposes Defendant Walter Leroy Loerwald's ("Loerwald") Motion for Judgment on the Pleadings, or in the Alternative, for Full or Partial Summary Judgment on the Plaintiff's First Amended Complaint, and the Twenty-Eighth, Twenty-Ninth and Thirtieth Claims for Relief ("Motion"). This Opposition is made and based upon the following Memorandum of Points and Authorities, the attached exhibits, the entire case file and any oral argument this Court may wish to entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Loerwald is not entitled to judgment on the pleadings or summary judgment. Loerwald was complicit with Gayler in defrauding the creditors by accepting a fraudulent deed of trust on the property located at 23 Golden Sunray Lane, Las Vegas, Nevada 89147 (APN 164-14-217-005) (the "Property"), and subsequently foreclosing on it. The Property is not automatically property of the Estate, it becomes property of the Estate if 23 Golden Sunray, LLC ("Golden Sunray") is declared to be the alter ego of Gayler. As set forth at length in the Trustee's Motion

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

for Partial Summary Judgment as to Claim No. 18 (Alter Ego) filed concurrently herewith, Golden Sunray must be declared to be the alter ego of Gayler, such that the Property is property of the Estate. Once the Property is declared to be property of the Estate, the Trustee intends to pursue Loerwald and Martin Barrett ("Barrett") to recover the proceeds of the sale of the Property.[1]

Further, Loerwald must not be allowed to rely upon the Order entered dismissing Barrett, as the Order must be set aside, as set forth in detail in the Motion to Set Aside, filed concurrently herewith. As such, Loerwald's Motion must be denied.

## II.    **STATEMENT OF FACTS**[2]

On January 30, 2013, the Court entered an Order, finding that it is undisputed that Gayler owned or controlled TGF. (Dkt# 305). TGF owns 100% of Golden Sunray.[3] Golden Sunray held a single asset which was a "spec home" in Las Vegas, Nevada (the "Property").[4] Gayler obtained personal loans from both Loerwald and Barrett that he secured against the Property.[5] Gayler defaulted on a Loerwald Note causing Loerwald to foreclose on the Property on December 7, 2009 for a $500,000 credit bid.[6]

By December 8, 2009, the Property was listed in Luxury Homes of Las Vegas magazine.[7] By December 10, 2009, the Property was listed in the Multiple Listing Service.[8] On December

---

[1] Because the Browns appear to be bona fide purchasers, the sale need not be set aside. 11 U.S.C. § 550(b). Moreover, a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2). *In re AVI, Inc.*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008).

[2] In addition to the facts set forth below, the Trustee hereby incorporates the facts and arguments set forth in the Trustee's Motion for Partial Summary Judgment as to Claim No. 18 and the Trustee's Motion to Set Aside, filed concurrently herewith, as though set forth fully herein.

[3] (Dkt# 105). TGF obtained 100% ownership of Golden Sunray via fraudulent transfer from Gayler individually. (Dkt# 317 at 12:7–25).

[4] See **Exhibit 1** at 160:22–25 (Transcript of 9/14/10 Deposition of Gayler).

[5] See **Exhibit 2** at 59:13–23 and 90:5–25 (Transcript of 10/3/11 2004 Examination of Gayler).

[6] Id. at 87:9–11; see also **Exhibit 3** (1/4/10 Trustee's Deed Upon Sale; TRUSTEE 00046–00049).

[7] See **Exhibit 4** at ¶¶ 2 & 3 (Declaration of Mary Ellen Brown (for brevity, exhibits to the declaration are not included, but can be provided to the Court upon request)).

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

13, 2009, Gayler was still living at the Property.[9]  On a December 22, 2009 Residential Purchase Agreement ("RPA") for the Property, Gayler was listed as the seller.[10]

On January 29, 2010, Loerwald sold the Property for Seven Million Dollars ($7,000,000).[11]  Loerwald netted $2,595,796.21 from the sale.[12]  Thus, because of an alleged pre-bankruptcy default, Gayler was able to successfully transfer $2,595,796.21 to Loerwald.

## III.  **LEGAL ARGUMENT**

Loerwald's Motion rests solely upon the finding that the Property is not property of the Estate.  However, such finding must be set aside as the Property will become property of the Estate if Golden Sunray is found to be the alter ego of Gayler.[13]  As set forth in the concurrent Motion to Set Aside, the Order dismissing Barrett must be set aside, based upon the Court's recent findings of fact in relation to the Trustee's Motion for Summary Judgment Pursuant to 11 U.S.C. § 727.  (Dkt# 305).  Since the time the Order was entered, the Court has been presented with new evidence and made findings, including, but not limited to, a finding that it is undisputed that Gayler owned or controlled TGF (which now controls the majority of Gayler's other entities).  This new finding supports a finding of alter ego relationship between Gayler and Golden Sunray, such that Golden Sunray's asset (the Property) becomes property of the Estate.  If the Court finds that Golden Sunray is the alter ego of Gayler, the Trustee's 28th, 29th and 30th claims for relief against both Barrett and Loerwald state a valid claim for relief and must be allowed to proceed.

---

[8] Id. at ¶ 5.

[9] Id. at ¶¶ 6 & 7.

[10] Id. at ¶ 17.

[11] See **Exhibit 5** (1/29/10 Grant, Bargain, Sale Deed; CCR 0103–0106).

[12] See **Exhibit 6** (HUD Settlement Statement, Wire Transfers and Bank Statements; LAWYERS TITLE 0197–0200, 0214, 0201 & 0196 and WELLS FARGO 2812, 2823 & 2837); see also **Exhibit 2** at 87:12–17.

[13] "Because the assets of an alter ego are essentially the assets of the bankruptcy estate, it is fair to allow the trustee to pursue those assets."  Towe v. Martinson, 195 B.R. 137, 141 (D. Mont. 1996).

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Additionally, Loerwald was complicit in the "friendly foreclosure" proceeding and must not be allowed to profit from defrauding Gayler's creditors and the Estate. Specifically, Gayler obtained personal loans from both Loerwald and Barrett that he secured against the Property.[14] Gayler defaulted on a Loerwald Note causing Loerwald to foreclose on the Property on December 7, 2009 for a $500,000 credit bid.[15] By December 8, 2009, only one day after the foreclosure sale, the Property was listed in Luxury Homes of Las Vegas magazine.[16] By December 10, 2009, the Property was listed in the Multiple Listing Service.[17] On December 13, 2009, Gayler was still living at the Property, and requested to continue living in the Property until January 30, 2010, despite the pending sale to the Browns.[18] On January 29, 2010, Loerwald sold the Property for Seven Million Dollars ($7,000,000).[19] Loerwald netted $2,595,796.21 from the sale.[20] Thus, because of an alleged pre-bankruptcy default, Gayler was able to successfully transfer $2,595,796.21 to Loerwald.[21] Throughout this entire process, the Brown's believed that Loerwald, Barrett and Gayler were partners.[22] As can be seen from these circumstances, Loerwald was complicit in Gayler's scheme of defrauding Gayler's creditors out of millions of dollars, and must not now be allowed to escape liability for his actions.

## IV.    **CONCLUSION**

In sum, the Order relied upon by Loerwald in support of the Motion must be set aside, and therefore, cannot serve as the basis to grant Loerwald's Motion. Moreover, if Golden

---

[14] See **Exhibit 2** at 59:13–23 and 90:5–25.

[15] Id. at 87:9–11; see also **Exhibit 3** (TRUSTEE 00046–00049).

[16] See **Exhibit 4** at ¶¶ 2 & 3. Indeed, magazines are not compiled, printed, and mailed in one day, so it appears that Loerwald knew he was going to obtain the Property well before the foreclosure sale.

[17] Id. at ¶ 5.

[18] Id. at ¶ 6, 7, 19 & 20.

[19] See **Exhibit 5**.

[20] See **Exhibit 6**.

[21] Id.

[22] See **Exhibit 4** at ¶ 51.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

Sunray is declared to be the alter ego of Gayler, a declaration that is supported by the Court's recent finding that Gayler owned or controlled TGF, the Property becomes property of the Estate, such that the Trustee can pursue its 28th, 29th and 30th claims for relief to recover the proceeds from the sale of the Property.  As such, Loerwald's Motion must be denied.

Dated this 26th day of February, 2013.

MARQUIS AURBACH COFFING

By /s/ Jessica M. Goodey
Phillip S. Aurbach, Esq.
Nevada Bar No. 1501
Jessica M. Goodey, Esq.
Nevada Bar No. 11973
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorneys for Chapter 7 Bankruptcy Trustee,
David A. Rosenberg

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:12089-001 1907169_1 2/26/2013 5:11 PM

# Exhibit 1

# _CONDENSED TRANSCRIPT_
# _DEPOSITION OF_
# _WILLIAM GAYLER VOL. I_

Date:  September 14, 2010

Case:

Barry Moore

vs.

William Gayler

Case No.:  A596777

**CAMEO KAYSER & ASSOCIATES**
7500 West Lake Mead Suite 286
Las Vegas, NV  89128
(702) 655-5092
(702) 433-5726

Page 157

1      Q.  If you read the first sentence, it says, "The
2  undersigned beneficiary shall execute a substitution of
3  trustee and deed of reconveyance of the above-described
4  deed of trust. At the close of escrow, escrow holders
5  are authorized and directed to record said
6  reconveyance, without payment to beneficiary, provided
7  that escrow holder is in position to concurrently
8  record a deed of trust encumbering property described
9  as," and it's 23 Golden Sunray Lane, Las Vegas, Nevada.
10     Have you ever seen this document before?
11     A.  No.
12     Q.  Well, this is the money that Marty Barrett
13  got from CH. Angelus, but at this time, in September of
14  '08, he is asking that no money be paid to him, and
15  that a reconveyance be issued and that a new deed of
16  trust be put on 23 Golden Sunray; is that fair?
17     MR. SHAPIRO:  Objection.  Lacks foundation.
18     THE WITNESS:  Chicago Title, I don't even
19  think was involved.
20  BY MR. HAYES:
21     Q.  Chicago Title wasn't involved?
22     A.  I thought it was Stewart Title that did the
23  deal.
24     Q.  You don't recall being at Chicago Title in
25  September of '08 regarding this loan, Mr. Gayler?

Page 158

1      A.  Do I recall being in Chicago Title?
2      Q.  Chicago Title --
3      A.  I don't recall being in Chicago Title.
4      Q.  -- regarding this loan, before it moved to
5  Stewart Title.
6      A.  Pardon?
7      Q.  Before it moved to Stewart Title.
8      A.  If it moved to Stewart Title, why would I be
9  in Chicago Title?
10     Q.  Before you went to Stewart Title this loan
11  was at Chicago Title.  Do you recall that?
12     A.  No.
13     Q.  Do you recall Marty Barrett agreeing to
14  remove the deed of trust that encumbered CH. Angelus
15  and put a new of deed of trust on 23 Golden Sunray?
16     A.  I recall that is that what he was going to
17  do, no matter what.
18     Q.  Yeah, because you owed him the money, not CH.
19  Angelus, correct?
20     A.  What's that got to do with it?
21     Q.  Well, if he removes the deed of trust without
22  payment, there wouldn't be a necessity to pay him,
23  would there?
24     A.  Well, it had to be removed anyway if Alper
25  was going to put a loan on there.

Page 159

1      Q.  Well, you said it didn't encumber the
2  property, didn't you?  Didn't you just testify --
3      A.  It still was a -- what do you call it on the
4  property?  It was still a --
5      Q.  A clouded title.
6      A.  There was still a cloud right there,
7  regardless.
8      Q.  Look at the next document, the note secured
9  by a deed of trust, in the amount of a million-310.
10     A.  Okay.
11     Q.  Do you recognize --
12     MR. SHAPIRO:  This is still in Exhibit 27,
13  correct?
14     MR. HAYES:  Right.
15  BY MR. HAYES:
16     Q.  Do you recognize the signature there?
17     A.  I recognize it.
18     Q.  And whose signature is that?
19     A.  Mr. Barrett's.
20     Q.  And what does this purport to be?
21     A.  It purports to be a note secured by a deed of
22  trust.
23     Q.  Who's the obligor?
24     A.  It looks like it's 23 Golden Sunray.
25     Q.  And by the managing member is you, correct?

Page 160

1      A.  The managing member is not me, no.
2      Q.  23 Golden Sunray, who does it have on the
3  document?
4      A.  Well, it's an entity that I'm -- it's an
5  entity, but the managing member is signed by me.
6      Q.  And that is what the document says, by
7  William A. Gayler?
8      A.  I never saw the document.  I don't know who
9  drafted it up, so I can't give you any information on
10  this.
11     Q.  If you turn to the next page, a short form
12  deed of trust and assignment on that.  Do you recognize
13  the signature on there?
14     A.  I recognize it.
15     Q.  Okay.  And whose signature is it?
16     A.  Mr. Barrett's.
17     Q.  Do you recognize the APN number at the top,
18  16414217005?  Do you know what that is?
19     A.  No.
20     Q.  Is that 23 Golden Sunray, LLC's APN?
21     A.  Could be.
22     Q.  23 Golden Sunray is what, Mr. Gayler?
23     A.  Just a spec home I was building.
24     Q.  A spec home.  You never lived in it?
25     A.  I lived in it.

# Exhibit 2

William Gayler - October 3, 2011
In Re: William A. Gayler

Page 1

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

In Re:                          )
                                )
WILLIAM A. GAYLER,              ) Case No.
                                ) 09-31603-MKN
                                )
        Debtor.                 )
                                )

RULE 2004 EXAMINATION OF WILLIAM GAYLER

Taken at the Offices of Marquis Aurbach Coffing

10001 Park Run Drive

Las Vegas, Nevada

On Monday, October 3, 2011

At 9:36 a.m.

Reported by:  Jane V. Efaw, CCR #601, RPR

Depo International, L.L.C.
703 South Eighth Street, Las Vegas, NV 89101 (800) 982-3299

William Gayler - October 3, 2011
In Re: William A. Gayler

Page 59

1    loan off.

2        Q.   Was Loerwald the contractor?

3        A.   Not originally.

4        Q.   Who was the original contractor?

5        A.   A guy named Don Baker.

6        Q.   Before the Nevada State Bank loan was paid

7    off, did they use any construction control?

8        A.   They used construction control.

9        Q.   And then after you borrowed the money to pay

10   off Nevada State Bank, did you use any construction

11   control for any further construction?

12       A.   No.

13       Q.   Ultimately, Loerwald had a million-dollar

14   deed of trust against it or more?

15       A.   Before I answer, I want to clarify that

16   ultimately Loerwald was never a contractor on it.  He

17   came on at the very end and was a consultant to help

18   me finish it.  But I do not recall ever actually

19   signing a contractor's contract.  It may be a

20   contract to help me.

21            But to go back.  I don't recall exactly the

22   time period.  But Loerwald did come in and lend money

23   to 23 Golden Sunray to move the house along.

24       Q.   Were there any deeds of trust put on for

25   work that was done on the project?  Do you know what

William Gayler - October 3, 2011
In Re: William A. Gayler

Page 87

1    thing as you previously testified?

2        A.    I would say that that was to pay expenses,

3    yes.

4        Q.    Now, Jayden didn't live with you at the

5    time.  Right?  He doesn't live with you, does he?

6        A.    Yeah.  Well, he did.

7        Q.    He did in November?

8        A.    He did in all of 2008 and all of 2009.

9        Q.    Mr. Loerwald foreclosed on the house on

10   Golden Sunray.  Correct?

11       A.    He did.

12       Q.    He then turned around and sold it for about

13   7 million bucks?

14       A.    Yes, he did.

15       Q.    And to the Browns.  Do you know the Browns

16   that he sold it to?

17       A.    I met them.

18       Q.    Did you get a commission or any piece of

19   that 7 million bucks?

20       A.    I wish.  I didn't get a commission.  I

21   should have gotten a commission but didn't.

22       Q.    So no money from the 7 million bucks went to

23   you or any entity owned or managed by you.  Correct?

24       A.    No.  There was money that was paid for all

25   the interior furnishings to 23 Golden Sunray.

**William Gayler - October 3, 2011**
**In Re: William A. Gayler**

Page 90

1  because it was the manager of Golden Sunray.  I don't

2  know how you kept this stuff straight.  I've got the

3  stuff right in front of me, and I can't get it

4  straight.

5        Why were there deposits from Loerwald and

6  Bob Muse into Golden Sunray?  Why were they putting

7  money into your Golden Sunray account?

8     A.   **They lent money to finish the project.**

9     Q.   And deeds of trusts were given to them?

10    A.   **I believe so.**

11    Q.   Now, we talked about Barrett and Loerwald

12  loaning money.  When you were buying them out of CH

13  Angelus, there was a $400,000 deed of trust to

14  Loerwald on the CH Angelus property.  Correct?

15    A.   **No.  It was a document that memorialized**

16  **that we recorded against Angelus I pledging my shares**

17  **as collateral for CH Angelus I for $400,000 and for a**

18  **million-two.**

19    Q.   A million-two to Barrett and $400,000 to

20  Loerwald?

21    A.   **Yes.**

22    Q.   Was Loerwald ever paid back that $400,000?

23    A.   **He was.**

24    Q.   When did that happen?

25    A.   **I transferred it over to 23 Golden Sunray.**

Depo International, L.L.C.**
**703 South Eighth Street, Las Vegas, NV 89101 (800) 982-3299

# Exhibit 3

Inst #: 201001040000361
Fees: $16.00 N/C Fee: $0.00
RPTT: $2550.00 Ex: #
01/04/2010 08:48:14 AM
Receipt #: 180552
Requestor:
WALTER LOERWALD
Recorded By: DXI  Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

Recording requested by and when recorded mail to:
All Tax Statements mail to:

Walter Loerwald
1008 Arabian Sand Ct.
Las Vegas, NV 89144

APN NO.     164-14-217-005

| R.P.T.T. | $2,550.00 | NV 13132 | T.S. No. |
|---|---|---|---|

## TRUSTEE'S DEED UPON SALE

THIS INDENTURE , made this 7ᵗʰ day of December, 2009, between NEVADA TRUST DEED SERVICES, INC., a NEVADA Corporation, at the duly appointed Trustee under the hereinafter mentioned Deed of Trust (herein called Trustee) and Walter Loerwald. (herein called Grantee)

WITNESSTH:

WHEREAS, on August 18, 2008 by Deed of Trust executed by 23 Golden Sunray, LLC., William A. Gayler, managing member and recorded August 20, 2008, in Book 20080820, as inst No. 01493, in the Official Records in the office of the County Recorder of Clark, County, Nevada, did grant and convey to Walter Loerwald (Nevada Trust Deed Services substituted) upon the Trusts therein expressed, the property hereinafter described to secure, among other obligations, payment of a certain promissory note and interest, according to the terms thereof; other sums of money advanced, and interest thereon; and

WHEREAS, breach and default was made under the terms of said Deed of Trust in the particulars set forth in the Notice of said Breach and Default hereinafter referred to, to which reference is hereby made; and

WHEREAS, on March 26, 2009, the then Beneficiary or holder of the said note did execute and deliver to Trustee written Declaration of Default and Demand for Sale, and thereafter there was filed for record on March 30, 2009, in the office of County Recorder of the said County, a Notice of said Breach and Default and of Election to cause Trustee to sell said property to satisfy the obligations secured by said Deed of Trust, which Notice was duly recorded in Book 20090330, as Doc. 01191, of Official Records of said county; and

WHEREAS, in consequence of said Declaration of Default, Election, Demand to Sale, and in compliance with the terms of said Deed of Trust, did execute its Notice of Trustee's Sale stating that said Trustee, by virtue of the authority in it vested, would sell at public auction to the highest bidder for cash, in lawful money of the United States, the property particularly therein and hereinafter described, said property being in the County of Clark, State of Nevada and fixing the time and place of sale as

TRUSTEE 00046

November 2, 2009 at 10 o'clock  A. M., at the office of  Nevada Legal News located at 930 S. 4th St., Las Vegas, NV 89101.

AND, cause copies of said Notice to be posted for not less than twenty days before the date of sale therein in the city or township of Las Vegas where the property is located, and in three public places in the City of Las Vegas, where said property was to be sold, and said Trustee did cause a copy of said Notice to be published once a week for three successive weeks before the date of sale therein fixed in Nevada Legal News a newspaper of general circulation printed and published in the city or district in which said real property is situated, the first date of such publication being October 12, 2009, and further postponed from time to time to December 7, 2009 at the same time and place.

AND,
WHEREAS, copies of said recorded Notice of Default and of said Notice of Sale were mailed, served or published in accordance with section 107.090 of the Nevada Revised Statutes; and or upon all those who were entitled to special notice said sale as in said section provided.

AND,
WHEREAS, Trustee did at the time and place of sale fixed as aforesaid, then and there sell, at public auction, to said Grantee, being the highest bidder therefore, the property hereinafter described for the sum of $500,000.00 dollars, paid in lawful money of the United States of America and by the partial satisfaction of the indebtedness then secured by said Deed of Trust.

NOW, THEREFORE, Trustee, in the consideration of the premises recited and of the sum above mentioned bid and paid by Grantee, the receipt whereof is hereby acknowledged, and by virtue of the authority vested in it by said Deed of Trust, does by these presents, GRANT AND CONVEY unto Grantee, but without any covenant or warranty, express or implied, all that certain property situated in the County of Clark, State of Nevada described as follows:

Parcel I:

Lot Forty (40) in Block "A" of Summerlin Village 18 Phase 1 Unit No. 2, as shown by map thereof on file in Book 94 of Plats, Page 89, and Amended Plat of a portion of

TRUSTEE 00047

Summerlin Village 18 Phase 1 Unit No. 2, on file in Book 100 of Plats, Page 84, in the Office of the County Recorder of Clark County, Nevada.

Parcel II:

A non-exclusive easement for ingress, egress, and enjoyment on, over, and across the Common Elements and Association Property, subject to the conditions set forth in the Amended and Restated Declaration of Covenants, Conditions, and Restrictions for Summerlin South Community Association recorded March 28, 1997, in Book 970328, as Document No. 01004, as the same may from time to time be amended and/or supplemented, in the Office of the County Recorder of Clark County, Nevada, which easement is appurtenant to Parcel I.

IN WITNESS WHEREOF, NEVADA TRUST DEED SERVICES, INC., said Trustee, has this day caused its corporate name and seal to be herein affixed by its President, thereunto duly authorized by resolution of its Board of Directors.

NEVADA TRUST DEED SERVICES, INC.
as Trustee aforesaid.

By _____
**CARROLL K. GAGNIER, PRESIDENT**

STATE OF NEVADA  }
COUNTY OF  CLARK  }

On December 7, 2009, before me, the undersigned, a Notary Public, in and for said State, personally appeared **CARROLL K. GAGNIER**, known to me  (or proved) to me to be the person whose name is subscribed to the above instrument who acknowledged
that _____ he _____ executed the above instrument.

_____
Signature                    (Notary Public)

NOTARY PUBLIC
LINDSEY OLDFIELD
STATE OF NEVADA · COUNTY OF CLARK
MY APPOINTMENT EXP. MAY 10, 2011
No: 07-3142-1

TRUSTEE 00048

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a. 164-14-217-005
   b. _____
   c. _____
   d. _____

2. Type of Property:

   | | | | | |
   |---|---|---|---|---|
   | a. ☐ | Vacant Land | b. ☒ | Single Fam. Res. | |
   | c. ☐ | Condo/Twnhse | d. ☐ | 2-4 Plex | |
   | e. ☐ | Apt. Bldg | f. ☐ | Comm'l/Ind'l | |
   | g. ☐ | Agricultural | h. ☐ | Mobile Home | |
   | ☐ | Other | | | |

   FOR RECORDER'S OPTIONAL USE ONLY
   Book: _____ Page: _____
   Date of Recording: _____
   Notes: _____

3. a. Total Value/Sales Price of Property                           $ 500,000.00
   b. Deed in Lieu of Foreclosure Only (value of property)    (                    )
   c. Transfer Tax Value:                                              $ 500,000.00
   d. Real Property Transfer Tax Due                             $ 2,550.00

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: _____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature  Nevada Trust Deed Services, Inc.        Capacity  Grantor

Signature  Carroll K. Gagnier (agent)        Capacity  Grantee

| **SELLER (GRANTOR) INFORMATION** **(REQUIRED)** | **BUYER (GRANTEE) INFORMATION** **(REQUIRED)** |
|---|---|
| Print Name: Nevada Trust Deed Services, Inc. | Print Name: Walter Loerwald |
| Address: 3445 Beam Dr. | Address: 1008 Arabian Sands Ct. |
| City: Las Vegas | City: Las Vegas |
| State: Nv.  Zip: 89139 | State: NV  Zip: 89144 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

| | |
|---|---|
| Print Name: _____ | Escrow #: NV 13132 |
| Address: _____ | |
| City: _____ | State: _____ Zip: _____ |

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

TRUSTEE 00049

Exhibit 4

1  Robert E. Schumacher, Esq. (SBN: 7504)
   Brian K. Walters, Esq. (SBN: 9711)
2  GORDON & REES LLP
   3770 Howard Hughes Parkway, Suite 100
3  Las Vegas, NV 89169
   Telephone: (702) 577-9300
4  Facsimile: (702) 255-2858
   Email: rschumacher@gordonrees.com
5        bwalters@gordonrees.com

6  Attorneys for
   EDWARD BROWN and MARY ELLEN BROWN

7

8                UNITED STATES BANKRUPTCY COURT

9                      DISTRICT OF NEVADA

10 In re:                              )  CASE NO.   BK-S-09-31603-MKN
                                       )
11 WILLIAM A. GAYLER,                  )  CHAPTER 7
                                       )
12            Debtor,.                  )  ADV. CASE NO. 11-01410-MKN
                                       )
13 JAMES F. LISOWSKI,                  )  **DECLARATION OF**
                                       )  **MARYELLEN BROWN**
14            Debtor.                   )
                                       )
15    vs.                              )
                                       )
16 23 GOLDEN SUNRAY, L.L.C., et al.    )
                                       )
17            Creditor.                 )
                                       )
18

19            **DECLARATION OF MARYELLEN BROWN**

20      Mary Ellen Brown declares as follows:

21      1.      I, Mary Ellen Brown, am over the age of 18 years and have personal knowledge

22 of the facts stated herein, except for those stated upon information and belief, and as to those, I

23 believe them to be true.  I am competent to testify as to the facts stated herein in a court of law

24 and will so testify if called upon.

25      2.      I became introduced to the property known as 23 Golden Sunray (Parcel # 164-

26 14-217-005) located in Las Vegas, Nevada (the "Property") on or about December 8, 2009.

27
                              -1-
28                   Declaration of Mary Ellen Brown

3.      I learned that the Property was for sale after seeing in it Luxury Homes of Las Vegas Magazine, after which we viewed the Property at luxuryhomesoflasvegas.com. (Exhibit "1" BROWN 0001).

4.      On or about December 8, 2009, I called Ken Lowman, the agent referenced as the real estate agent on the website, to inquire about the Property.

5.      On December 10, 2009, we discovered The Property was listed in the Multiple Listing Service ("MLS"). (Exhibit "2" BROWN 0002).

6.      On December 13, 2009, we met with Ms. Stewart to look at the Property. I understood that Ms. Stewart was an agent working for Mr. Lowman at Luxury Homes of Las Vegas.

7.      During our viewing of the home, we were informed by Ms. Stewart that Mr. Gayler still resided in the home. Mr. Gayler was present and confirmed to us that he was living in the home.

8.      We visited the Property on two other occasions after December 13, 2009. On December 17, 2009, we returned to our home in Michigan.

9.      During this time period, we were not represented by a real estate agent.

10.     On December 21, 2009, Edward and I deposited an earnest money amount of $500,000 with Lawyer's Title. (Exhibit "3" BROWN 0080).

11.     When we inquired about the Property, Mr. Lowman and Ms. Stewart informed us that the Property was owned by three partners that were interested in selling the Property as a "spec home." Shortly thereafter, we learned that the "three partners" were individuals Walter Loerwald (aka Leroy Loerwald), Martin Barrett, and William Gayler. Aside from Mr. Lowman's representation to us about the ownership of the Property and the relationship of Mssrs. Loerwald, Gayler and Barrett, we had no information as to the Property's ownership history.

-2-
Declaration of Mary Ellen Brown

12.    I was not aware of how long Mr. Loerwald had owned the Property prior to our purchase of the Property, nor was I made aware of Mr. Loerwald's recordation of the Trustee's Sale.

13.    On December 22, 2009, we executed our first offer to Mr. Loerwald through a Residential Purchase Agreement ("RPA"). Our offer was seven million dollars cash. Our offer included the Property and items listed in "Addendum No. 1" attached to the RPA. (Exhibit "4" BROWN 0070–0081).

14.    The items we wanted included in the purchase of the Property as referenced in Addendum No.1 were as follows:

> All existing art and furniture to be included with sale. All plasma televisions, audio visual equipment and art both interior and exterior to be included. Exterior art/stone pieces to be included. Third Level (handwritten). Children's bedroom furniture is not requested with this offer.

Id. at 81.

15.    This negotiation took place as part of a conference call between Edward, myself, Mr. Lowman and Mr. Loerwald. Edward and I were in Michigan at the time of the conference call.

16.    The December 22, 2009 RPA disclosed Mr. Gayler as a real estate licensee of interest in the transaction as a Principal (Seller or Buyer). Id. at 75.

17.    The December 22, 2009 RPA also contained a "Consent to Act" document allowing Luxury Homes of Las Vegas to represent both the buyer and seller which described Mr. Gayler as the seller and Edward and I as the buyers. (Exhibit "5" BROWN 0016).

18.    On December 23, 2009, Mr. Loerwald, not Mr. Gayler, submitted Counter-Offer No. 1 to Edward and I through Ms. Stewart. (Exhibit "6" BROWN 0019).

19.    Mr. Loerwald's Counter-Offer No.1 asked us to allow the seller to occupy the home until January 30, 2010 whereby the seller (Mr. Loerwald) would obtain an insurance policy

-3-
Declaration of Mary Ellen Brown

during that time period and would leave $25,000 in escrow that would be forfeited to the us if the seller did not vacate the property. Id.

20.     The "seller" to occupy the property was not Mr. Loerwald. It was Mr. Gayler. Mr. Gayler was not listed as the seller on the Counter-Offer No. 1. Id.

21.     Also, within Counter-Offer No. 1 executed by Mr. Loerwald was the request that paragraph 11(A) not be applicable. Paragraph 11(A) governed the additional disclosure that Mr. Gayler as the seller is a licensed real estate agent in interest. Id. at 0010, 0019 and 0030.[1]

22.     On December 24, 2009, we signed Counter-Offer No.1 subject to the terms we set forth in Counter-Offer No. 2. Id. at 19-20.

23.     Our Counter-Offer No. 2 was accepted by Edward, myself and Mr. Loerwald for the sales price of seven million dollars cash firm and for close of escrow and possession to take place on January 29, 2010. (Exhibit "7" BROWN 0020).

24.     As part of the negotiations, Edward and I were told that paying cash for the Property would allow us to purchase the Property for a lower price than if we financed the Property.

25.     I did not tell anyone that we were paying cash for the Property until that information was conveyed in our first purchase offer.

26.     Mr. Lowman suggested that we meet with an attorney to review the transaction and respective sales documents. We agreed with Mr. Lowman's recommendation that it was a good idea to have an attorney review the documents related to the purchase of the Property.

27.     On January 13, 2012, we retained attorney Sean Clagett, Esq. to review the sale and escrow documents. (Exhibit "8" BROWN 0004).

28.     Mr. Clagett failed to inform us that the house was recently foreclosed on by Loerwald nor of any other liens or encumbrances on the Property. Mr. Clagett did not inform us

---

[1] Further, the box checked that the offer was made by the "buyer" is incorrect and believed to be confused with Counter Offer No. 2 because Mr. Loerwald sent us Counter Offer No. 1 and we sent Counter Offer No. 2.

of any other irregularities with the proposed transaction and advised us that there would be no legal issues should we choose to proceed with the purchase.

29.    When signing the Consent to Act form, Edward and I believed we were dealing with Mr. Lowman, Mr. Loerwald, Mr. Gayler, and Mr. Barrett.

30.    The Consent to Act form was later changed by someone by hand scratching out Mr. Gayler's name as the seller in two locations of the document and replacing it with Mr. Loerwald, where Mr. Loerwald initialed next to the change. (See Exhibit "5").

31.    As a result, on July 30, 2012, I drafted an email to Lawyer's Title inquiring as to why our signatures were on the "Escrow Instructions & General Provisions" document dated July 16, 2009 when we did not become aware of the property until December 2009. (Exhibit "9" BROWN 0129-0131).

32.    The escrow agent who responded, Jennifer Griffin, informed me that the seller opened the file in July 2009 so they could begin working on legal items. (Exhibit "9"). The seller listed was Mr. Loerwald. Within this email, I was also informed that "there were a lot of liens on the prelim, so they probably just needed to see what they needed to work on for when an offer was put in." Id.

33.    However, during the time immediately before closing the transaction, escrow officer Jennifer Griffin assured us that all liens would be clear prior to our closing and that would give us the ability to have an excellent title policy on the home. (Exhibit "10" BROWN 082).

34.    I had no knowledge about any of the liens the title company was referencing.

35.    Likewise, I was not aware of any subordination agreements between any of the lien holders.

36.    To my knowledge, there were no subordination agreements relating to 23 Golden Sunray recorded between any lien holders.

37.    On January 29, 2010, Edward and I closed escrow and our purchase was final. We took possession of the home that day.

-5-
Declaration of Mary Ellen Brown

38.    Immediately after closing, Edward and I traveled to California for a previously scheduled surgical procedure for Edward.  We communicated to Mr. Gayler and Mr. Loerwald that we would be out of town for Ed's surgery.

39.    While in California, I received a call from Mr. Loerwald under the guise of an inquiry regarding Ed's health.

40.    Upon returning to Nevada from California, we discovered several items missing from the house including a $35,000 Kaleidescape movie server, furniture, wine and several boxes containing unknown items.  These were items that were specifically included with the sale of the house.

41.    Edward and I reviewed the security camera footage for the time that we were away.  On the footage recorded on January 30, 2010, Edward and I observed Mr. Gayler with another man who we believe to be Mr. Loerwald, disarming our alarm system, entering the house and loading up their vehicles with items from the house.

42.    Mr. Gayler and Mr. Loerwald did not have our permission to enter our home.

43.    After reviewing the security camera footage, we realized that the purpose of Mr. Loerwald's call to us while in California was to confirm that we were still out of state so that they could make their entry into our house.

44.    We attempted to contact Mr. Gayler to inquire about what we had seen on the security footage.  Mr. Gayler would not answer his phone or return our calls.

45.    We contacted Mr. Loerwald to inquire about what we had seen on the security footage.  Mr. Loerwald represented to us that Mr. Gayler was "out of the country."  We told Mr. Loerwald and Mr. Lowman that we intended to get the police involved.

46.    Shortly thereafter, Mr. Lowman showed up at our house with a check for $35,000, the agreed upon value of the Kaleidescape system.

-6-
Declaration of Mary Ellen Brown

47.    With respect to Gayler's bankruptcy filing, I had no knowledge of those proceedings until well after the closing on 23 Golden Sunray.

48.    I had no knowledge that Mr. Loerwald initiated foreclosure proceedings approximately three weeks prior to purchasing the Property.

49.    I had no knowledge that Mr. Loerwald purchased the Property on December 7, 2009 for $500,000.

50.    When we first became interested in the Property, I did not know that Mr. Loerwald had purchased the home through the foreclosure because the Trustee's sale was not yet recorded. I did not review the Clark County Assessor's website to review information regarding the Property, as I believed that any issues would have been discovered by Mr. Clagett or through title.

51.    It was my understanding that Mssrs. Gayler, Loerwald and Barrett were partners and co-owners of the Property between the time we became interested and Loerwald's recording of the sale.

52.    I had no idea nor reason to believe that there were numerous liens for millions of dollars encumbering the Property when we purchased it. I assumed that any title defects would have been brought to our attention by Mr. Clagett and/ or the title officer during escrow.

53.    Pursuant to NRS § 53.045, I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.


Dated this _____ day of January, 2013.


MARY-ELLEN BROWN

_Mary Ellen Brown_

-7-
Declaration of Mary Ellen Brown

# Exhibit 5

APN: 164-14-217-005
ESCROW NO:    01412909-100-JC3
WHEN RECORDED MAIL TO and
MAIL TAX STATEMENT TO:

Edward Brown
MaryEllen Brown
6 Rue Grimaldi Way
Henderson, NV 89011

Inst #: 201001290003515
Fees: $16.00 N/C Fee: $0.00
RPTT: $36700.00 Ex: #
01/29/2010 01:36:52 PM
Receipt #: 213734
Requestor:
LAWYERS TITLE OF NEVADA VIL
Recorded By: ARO   Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

## GRANT, BARGAIN, SALE DEED

R.P.T.T. $35,700.00
THIS INDENTURE WITHESSETH:  That

**Walter Loerwald, a married man as his sole and separate property**

FOR A VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, do(es) hereby
Grant, Bargain, Sell and Convey to

**Edward Brown and MaryEllen Brown , husband and wife as joint tenants**

all that real property situated in the County of Clark, State of Nevada, described as follows:

For legal description of the real property, see Exhibit A attached hereto and made a part hereof.

SUBJECT TO:    1.   Taxes for the fiscal year 2009 – 2010
                        2.   Rights of Way, reservations, restrictions, easements, and conditions of record.

CCR 0103

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Witness my hand this _26_ day of January, 2010.

_Walter Loerwald_
Walter Loerwald

_____

_____    _____

STATE OF NEVADA
COUNTY OF _Clark_ } ss:

On _Jan. 26, 2010_, personally appeared before me, a Notary Public in and for said County and State, _Walter Loerwald_, who acknowledged to me that _he_ executed the same.

WITNESS my hand and official seal.

_J. Clifton_
NOTARY PUBLIC in and for said County and State.

J. CLIFTON
Notary Public State of Nevada
No. 96-0358-1
My appt. exp. Feb. 25, 2012

CCR 0104

**Exhibit "A"**

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

Parcel One (1):

Lot Forty (40) in Block A of AMENDED PLAT OF A PORTION OF SUMMERLIN VILLAGE 18 PHASE 1 UNIT NO. 2, as shown by map thereof on file in Book 100 of Plats, Page 84 in the Office of the County Recorder of Clark County, Nevada.

Parcel Two (2):

A non-exclusive easement for ingress, egress and enjoyment on, over and across the Common Elements and Association Property subject to the conditions set forth in the Amended and Restated Declaration of Covenants, Conditions and Restrictions and Reservations of Easements for Summerlin South Community Association recorded March 28, 1997 in Book 970328 as Document No. 1004 of Official Records, as the same may from time to time be amended and/or supplemented, in the Office of the County Recorder of Clark County, Nevada, which easement is appurtenant to Parcel One (1).

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. **Assessor Parcel Number(s)**
   a.  164-14-217-005
   b.
   c.
   d.

2. **Type of Property:**

   | | | | |
   |---|---|---|---|
   | a. ☐ Vacant Land | b. X Single Fam Res | | |
   | c. ☐ Condo/Twnhse | d. ☐ 2-4 Plex | | |
   | e. ☐ Apt. Bldg | f. ☐ Comm'l/Ind'l | | |
   | g. ☐ Agricultural | h. ☐ Mobile Home | | |
   | ☐Other | | | |

   | FOR RECORDER'S OPTIONAL USE ONLY |
   |---|
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes: |

3. a. **Total Value/Sales Price of Property:**    $**7,000,000.00**
   b. Deed in Lieu of Foreclosure Only (value of property)    ($_____)
   c. Transfer Tax Value:    $**7,000,000.00**
   d. Real Property Transfer Tax Due:    $**35,700.00**

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption, per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: _____%

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature X _[signature]_    Capacity   Seller

Signature_____    Capacity_____

| **SELLER (GRANTOR) INFORMATION**<br>**(REQUIRED)** | **BUYER (GRANTEE) INFORMATION**<br>**(REQUIRED)** |
|---|---|
| Print Name: Walter Loerwald | Print Name: Edward Brown |
| Address: 1008 Arabian Sand Ct. | Address: 6 Rue Grimaldi Way |
| City/State/Zip: Las Vegas, NV 89144 | City/State/Zip: Henderson, NV 89011 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

LAWYERS TITLE OF NEVADA    Escrow #: 1412909-300-JC3
1635 Village Center Circle    Escrow Officer: Jennifer Clifton
Las Vegas, Nv 89134

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

CCR 0106

# Exhibit 6

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. TYPE OF LOAN | | | OMB No. 2502-0265 |
|---|---|---|---|---|

SETTLEMENT STATEMENT

| 1. ☐ FHA | 2. ☐ FMHA | 3. ☐ CONV. UNINS. |
|---|---|---|
| 4. ☐ VA | 5. ☐ CONV. INS. | |

Lawyers Title of Nevada
3980 Howard Hughes Pkwy
Ste. 100
Las Vegas, NV 89149
**FINAL**

6. ESCROW FILE NUMBER: 01412909-100  JC3        7. LOAN NUMBER:

8. MORTGAGE INSURANCE CASE NUMBER:

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| D. NAME OF BORROWER: | Edward Brown and MaryEllen Brown |
| ADDRESS OF BORROWER: | 6 Rue Grimaldi Way<br>Henderson, NV 89011 |
| E. NAME OF SELLER: | Walter Loerwald |
| ADDRESS OF SELLER: | 1008 Arabian Sand Ct.<br>Las Vegas, NV 89144 |
| F. NAME OF LENDER: | Cash Sale |
| ADDRESS OF LENDER: | , |
| G. PROPERTY LOCATION: | 23 Golden Sunray Lane,<br>Las Vegas, NV  89147<br>Clark 164-14-217-005 |
| H. SETTLEMENT AGENT: | Lawyers Title of Nevada |
| PLACE OF SETTLEMENT: | 3980 Howard Hughes Pkwy, Ste. 100, Las Vegas, NV 89149 |
| I. SETTLEMENT DATE: | 01/29/2010 |

PRORATION DATE:    01/29/2010        FUNDING DATE:    01/29/2010
DISBURSE DATE:    01/29/2010

| J.        SUMMARY OF BORROWER'S TRANSACTION | | K.        SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | 7,000,000.00 | 401. Contract Sales Price | 7,000,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 12,655.32 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller In Advance:* | | *Adjustments For Items Paid By Seller In Advance:* | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes 01/29/10-04/01/10 | 6,027.64 | 407. County Taxes 01/29/10-04/01/10 | 6,027.64 |
| 108. Assessments | | 408. Assessments | |
| 109. Sewer    01/29/10-07/01/10 | 91.39 | 409. Sewer    01/29/10-07/01/10 | 91.39 |
| 110. Master HOA Due 01/29/10-02/01/10 | 4.24 | 410. Master HOA 01/29/10-02/01/10 | 4.24 |
| 111. Sub-HOA Due 01/29/10-02/01/10 | 12.53 | 411. Sub-HOA Due 01/29/10-02/01/10 | 12.53 |
| 112. Trash    01/29/10-04/01/10 | 27.09 | 412. Trash    01/29/10-04/01/10 | 27.09 |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from borrower: | 7,018,818.21 | 420. Gross Amount Due to Seller | 7,006,162.89 |
| **200. Amounts Paid by or in behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | 500,000.00 | 501. Excess deposit (see instructions) | |
| 202. | | 502. Settlement charges to Seller (line 1400) | 728,229.77 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. See Payoff Addendum | 1,478,734.00 |
| 205. | | 505. See Payoff Addendum | 2,202,898.71 |
| 206. Buyer's Closing Funds Deposit | 6,518,814.01 | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller:* | | *Adjustments For Items Unpaid By Seller:* | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments 12/01/09 - 01/29/10 | 504.20 | 512. Assessments 12/01/09-01/29/10 | 504.20 |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 7,019,318.21 | 520. Total Reductions In Amount Due Seller | 4,410,366.68 |
| **300. Cash at Settlement from/to Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 7,018,818.21 | 601. Gross amount due to Seller (line 420) | 7,006,162.89 |
| 302. Less amount paid by/for Borrower (line 220) | 7,019,318.21 | 602. Less reductions in amount due Seller (line 520) | 4,410,366.68 |
| 303. Cash TO Borrower: | 500.00 | 603. Cash TO Seller: | 2,595,796.21 |

INITIALS: _____   _____       _____

Hudc.rpt (09/21/2009)

ESCROW FILE NUMBER:    01412909-100  JC3

OMB No. 2502-0265

**L. SETTLEMENT CHARGES:**

| 700. Total Sales/Broker's Commission: | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| Based on Price $7,000,000.00 @ % =    350,000.00 | | | |
| Division of Commission (line 700) follows: | | | |
| 701. $    175,000.00  to Luxury Homes of Las Vegas | | | |
| 702. $    175,000.00  to Luxury Homes of Las Vegas | | | |
| $    0.00  to | | | |
| 703. Commission paid at settlement | | | 350,000.00 |
| 704. | | | |
| 705. | | | |
| 706. | | | |
| 707. | | | |
| 708. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount Fee | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lenders Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Adjustment   months @$ | | 0.00 | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or closing fee to Lawyers Title of Nevada | | 3,500.00 | 3,500.00 |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | | | |
| (included above item numbers: ) | | | |
| 1109. Lender's Coverage | | | |
| 1110. Owner's coverage $  7,000,000.00 to Lawyers Title of Nevada | | | 11,550.00 |
| 1111. | | | |
| 1112. Reconveyance Fee to Lawyers Title of Nevada | | | 250.00 |
| 1113. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees: Deed$ Mortgage $ Release $ | | 53.00 | |
| 1202. City/County tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. City Transfer Tax | | | |
| 1205. County Transfer Tax to Lawyers Title of Nevada | | | 35,700.00 |
| 1206. | | | |
| 1207. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. | | | |
| 1304. Home Warranty Program to National Home Warranty | | | 1,845.00 |
| 1305. Delinquent SID (2/1/10) to Clark County Treasurer - SID | | | 2,534.12 |
| 1306. Delinquent Property Taxes to Clark County Treasurer | | | 57,627.71 |
| 1307. 4th Qtr Taxes (Due 3/1/10) to Clark County Treasurer | | 8,871.32 | |
| 1308. Master HOA - Transfer Fee to Summerlin So. Comm. Assoc. | | | 150.00 |
| 1310. Master HOA-Delinquent Dues/Fee to Summerlin So. Comm. Assoc. | | | 232.83 |
| 1311. Sub-HOA-Delinquent Dues/Fees to The Ridges HOA | | | 127,986.87 |
| 1312. Master HOA- Feb. Dues to Summerlin So. Comm. Assoc. | | 43.00 | |
| 1313. Sub-HOA - Feb. Dues to The Ridges HOA | | 188.00 | |

INITIALS: _____  _____

Hudc.rpt (09/21/2009)

Printed by Jennifer Clifton on 05/06/2010 at 10:33:46 AM

LAWYERS TITLE 0198

ESCROW FILE NUMBER:    01412909-100  JC3

OMB No. 2502-0265

| | | |
|---|---|---|
| 1314. Sewer Fees Due to Clark County Water Reclamation | | 109.00 |
| 1315. Trash Bill - Bal Due to Republic Services | | 42.33 |
| 1316. Attorney Fees to Pengilly,Robbins,Slater & Bell | | 84,773.61 |
| 1317. Eagle Sentry Invoice to Sound & Secure, Inc. | | 18,380.47 |
| 1318. Addison Glass Lien/LisPendens to Addison Glass | | 30,690.63 |
| 1319. Sunrise Mechanical Lien to Sunrise Mechanical | | 2,857.20 |
| 1400. Total Settlement Charges (Enter on line 103,Section J -and- line 502, Section K) | 12,655.32 | 726,229.77 |

INITIALS: _____    _____    _____    _____

LAWYERS TITLE 0199

ESCROW FILE NUMBER:    01412909-100  JC3                                    OMB No. 2502-0265

## Payoff Addendum

| BREAKDOWN OF PAYOFF ON HUD line 504 | | |
|---|---|---|

Payoff to:  Martin Barrett                                    Loan #:
            10404 Mansion Hills

            Las Vegas, NV 89144

| Description | Amount |
|---|---|
| Principal Balance | 1,300,000.00 |
| Interest | 0.00 |
| Int. 9/26/08 - 1/29/10 $356 perdiem compound annua | 178,734.00 |
| Total Payoff | 1,478,734.00 |

**Total as shown on HUD line #504.**        **1,478,734.00**

| BREAKDOWN OF PAYOFF ON HUD line 505 | | |
|---|---|---|

Payoff to:  Martin Barrett.                                   Loan #:

| Description | Amount |
|---|---|
| Principal Balance | 300,000.00 |
| Interest from 12/08/2008 to 01/29/2010 | 41,128.71 |
| Late fees | 33,600.00 |
| Total Payoff | 374,728.71 |

Payoff to:  Martin Barrett..                                  Loan #:

| Description | Amount |
|---|---|
| Principal Balance | 700,000.00 |
| Interest from 12/16/2008 to 01/29/2010 | 94,070.00 |
| Accrued Late Fees | 79,100.00 |
| Total Payoff | 873,170.00 |

Payoff to:  Bob Luce                                          Loan #:
            2134 Montana Pine Drive

            Henderson, NV 89052

| Description | Amount |
|---|---|
| Principal Balance | 955,000.00 |
| Interest | 0.00 |
| Total Payoff | 955,000.00 |

**Total as shown on HUD line #505.**        **2,202,898.71**

INITIALS: _____  _____  _____

Hudc.rpt (09/21/2009)                                   Printed by Jennifer Clifton on 05/08/2010 at 10:33:46 AM

LAWYERS TITLE 0200

Account Number: 1235050384

# OUTGOING WIRE REQUEST

**Date:** January 29, 2010

**Time:**   2:14:22 pm
Wire Cutoff is   2:00 pm

**To:** Escrow Accounting

**Wire #: PENDING**

**Bank Name:**       Bank of America
**Escrow Number:** 01412909
**Amount:**         $ 2,379,344.04

**Escrow Branch #:**   100
**Repetitive #:**

**Name of Bank Wire is Being Sent to:**    WELLS FARGO BANK, NA
**Bank Routing or ABA Number:**            121000248
**Name of Account Holder at Bank:**        LEROY LOERWALD
**Account Number at the Bank:**            █████4177
**Further Credit to:**
**Loan/Account Number:**                   N/A

**Please Reference on Wire:**      23 GOLDEN SUNRAY

**Offline Bank ABA Number:**

**Offline Bank Name:**

**Escrow Officer Signature:**           _____

**Escrow Asst/Second Officer Signature:**  _____

**Accounting Use Only:**

**Date:**
**Time:**
**Reference #:**
**Sent By:**
**Approved By:**                **Impact Entered By:** Jennifer Clifton

**Las Vegas Main Escrow (Unit 10338)**

**Bascomb, Patricia**

| | |
|---|---|
| **From:** | LaGrua, Juliann |
| **Sent:** | Thursday, March 04, 2010 10:31 AM |
| **To:** | Clifton, Jennifer; Clifton, Jennifer; Bascomb, Patricia |
| **Subject:** | Wire Out Sent for 01412909 |

```
The following wire has been sent:
Escrow No: 01412909
Amount:   166,452.17
Date:03/04/2010 10:30 AM
By:Juliann Lagrua
Tracking Number:6481
```

1

LAWYERS TITLE 0201

**Clifton, Jennifer**

| | |
|---|---|
| **From:** | LaGrua, Juliann |
| **Sent:** | Thursday, May 06, 2010 12:30 PM |
| **To:** | Clifton, Jennifer; Clifton, Jennifer; Crawford, Sara |
| **Subject:** | Wire Out Sent for 01412909 |

*The following wire has been sent:*
*Escrow No: 01412909*
*Amount:     50,000.00*
*Date:05/06/2010 12:29 PM*
*By:Juliann Lagrua*
*Tracking Number:8537*

1

LAWYERS TITLE 0196

REDE Page 3 of 4

Account number: ████4177 ■ January 29, 2010 - January 31, 2010 ■ Page 2 of 3



## Activity summary

| | |
|---|---|
| Beginning balance on 1/29 | $0.00 |
| Deposits/Additions | 2,379,422.26 |
| Withdrawals/Subtractions | - 10.00 |
| Ending balance on 1/31 | $2,379,412.26 |

Account number: ████4177

**LEROY LOERWALD**

*Nevada account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 321270742

**Overdraft Protection**

This account is not currently covered by Overdraft Protection. If you
would like more information regarding Overdraft Protection and
eligibility requirements please call the number listed at the top of
your statement or visit your Wells Fargo branch.

## Interest summary

| | |
|---|---|
| Interest paid this statement | $78.22 |
| Average collected balance | $2,379,334.04 |
| Annual percentage yield earned | 0.40% |
| Interest earned this statement period | $78.22 |
| Interest paid this year | $78.22 |
| Total interest paid in 2009 | $0.00 |

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 1/29 | | WT Fed#07622 Bank of America, N /Org=Lawyers Title of Nevada, Inc. Srf# 2010012900359746 Trn#100129105091 Rfb# 28735547 | 2,379,344.04 | | |
| 1/29 | | Wire Trans Svc Charge - Sequence: 100129105001 Srf# 2010012900359746 Trn#100129105091 Rfb# 28735547 | | 10.00 | |
| 1/29 | | Interest Payment | 78.22 | | 2,379,412.26 |
| **Ending balance on 1/31** | | | | | **2,379,412.26** |
| **Totals** | | | **$2,379,422.26** | **$10.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

 IMPORTANT ACCOUNT INFORMATION

As of February 22, 2010, how you access the Direct Deposit Advance service for future advances is changing. Access at Wells Fargo
ATMs will no longer be available. You may continue to access the Direct Deposit Advance service through Online Banking or by calling
Wells Fargo Phone Bank at 1-800-TO-WELLS (1-800-869-3557) as long as your account meets the eligibility criteria described in the
Direct Deposit Advance Service Agreement and Product Guide.

Sheet Seq = 0112336
Sheet 00002 of 00003

WELLS FARGO 2812



PMA account ███4177 ■ March 1, 2010 - March 31, 2010 ■ Page 4 of 7

# PMA ® Prime Checking Account

## Activity summary

| | |
|---|---|
| Balance on 3/1 | 1,625,090.55 |
| Deposits/Additions | 314,012.46 |
| Withdrawals/Subtractions | - 481,939.65 |
| **Balance on 3/31** | **$1,457,163.36** |

Account number: ███4177

**LEROY LOERWALD**

Wells Fargo Bank, N.A., Nevada (Member FDIC)

Questions about your account: **1-877-646-8560**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Interest you've earned

| | |
|---|---|
| Interest earned this month | $686.20 |
| Average collected balance this month | $1,615,558.44 |
| Annual percentage yield earned | 0.50% |
| Interest paid this year | $1,338.71 |
| Total interest paid in 2009 | $0.00 |

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | Beginning balance on 3/1 | | | | 1,625,090.95 |
| 3/3 | Check | 5009 | | 200.00 | 1,624,890.55 |
| 3/4 | WT Fed#08481 Bank of America, N /Org=Lawyers Title of Nevada, Inc. Srf# 2010030400186607 Trn#100304046461 Rfb# 29154755 | | 166,452.17 | | |
| 3/4 | Withdrawal Made IN A Branch/Store | | | 35,000.00 | |
| 3/4 | WFHM Mortgage Checkpaymt 030410 05007 0108629338 | ^5007 | | 3,569.89 | |
| 3/5 | Check | 5010 | | 100,000.00 | 1,752,772.83 |
| 3/5 | Macys Payment Check Pymt 100303 05004 5742E77B4Bba4992 | ^5004 | | 216.74 | |
| 3/5 | Citicard Payment Check Pymt 100304 05005 6F74B03A5B6041F9 | ^5005 | | 16,771.24 | |
| 3/5 | Check | 5006 | | 1,000.00 | |
| 3/5 | Check | 5008 | | 14.97 | 1,634,770.88 |
| 3/8 | Transfer to DDA # 000002145348732 | | | 625.00 | 1,634,145.88 |
| 3/10 | Withdrawal Made IN A Branch/Store | | | 7,000.00 | 1,627,145.88 |
| 3/11 | Bank Originated Debit | | | 200.00 | 1,626,945.88 |
| 3/12 | Check | 5013 | | 300.00 | |
| 3/12 | Check | 5011 | | 500.00 | |
| 3/12 | Check | 5014 | | 5,350.00 | |
| 3/12 | Time Warner Cabl Twc Eftpmt 031010 0091121157 Loerwald,Leroy | | | 1,000.00 | 1,619,795.88 |
| 3/15 | Check | 5012 | | 2,193.71 | 1,617,602.17 |
| 3/16 | Check | 5015 | | 839.29 | 1,616,762.88 |
| 3/22 | Check | 5017 | | 576.97 | |
| 3/22 | VISAPayment Check Pymt 100320 05019 12B5Ed3716292899 | ^5019 | | 523.87 | |
| 3/22 | WFHM Mortgage Checkpaymt 032210 08016 0108629338 | ^8016 | | 3,569.89 | 1,612,092.15 |
| 3/23 | Check | 5018 | | 522.62 | 1,611,569.53 |
| 3/25 | Withdrawal Made IN A Branch/Store | | | 1,500.00 | |
| 3/25 | Check | 5020 | | 295.00 | 1,609,774.53 |
| 3/30 | POSPurchase - 03/30 Mach ID 000000 Guess #2001 Guess #200Los Angeles CA 5801 ?McC=5699 321270742DA | | | 151.46 | 1,609,623.07 |
| 3/31 | WT Fed#01566 City National Bank /Org=Noble Title, Ltd Srf# 2010033100004096 Trn#100331078930 Rfb# 07849-0110Tr | | 146,737.99 | | |
| 3/31 | WT Fed#02944 Nevada State Bank /Org=FDIC ASReceiver For Srf# 2010033100008633 Trn#100331100191 Rfb# 4 2010090000063 | | 116.10 | | |
| 3/31 | Wire Trans SvcCharge - Sequence: 100331108781 Srf# Fw0440109091209 Trn#100331108781 Rfb# | | | 20.00 | |
| 3/31 | Reversal of Wire Transfer Charges | | 20.00 | | |

2960



PMA account ███████ 4177  ■  May 1, 2010 - May 31, 2010  ■ Page 4 of 8

# PMA ® Prime Checking Account

### Activity summary

| | |
|---|---|
| Balance on 5/1 | 1,344,780.71 |
| Deposits/Additions | 50,450.97 |
| Withdrawals/Subtractions | - 438,250.90 |
| **Balance on 5/31** | **$956,980.78** |

Account number: ███████ 4177

**LEROY LOERWALD**

Wells Fargo Bank, N.A., Nevada (Member FDIC)

Questions about your account: **1-877-646-8560**

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

### Interest you've earned

| | |
|---|---|
| Interest earned this month | $430.97 |
| Average collected balance this month | $1,076,705.24 |
| Annual percentage yield earned | 0.47% |
| Interest paid this year | $2,346.63 |

### Transaction history

| Date | Description | Check No. | Deposits/Additions | Withdrawals/Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | Beginning balance on 5/1 | | | | 1,344,780.71 |
| 5/3 | Check | 5028 | | 100,000.00 | |
| 5/3 | POSPurchase - 05/03 Mach ID 000000 Lexus of Las Vetexus of Llas Vegas NV 5801 ?MoC=5511 321270742DA | | | 34.48 | 1,244,746.23 |
| 5/4 | Withdrawal Made IN A Branch/Store | | | 1,500.00 | |
| 5/4 | POSPurchase - 05/04 Mach ID 000000 #06016 Albertso#06016 Albtas Vegas NV 5801 ?MoC=5411 321270742DA | | | 70.58 | 1,243,175.65 |
| 5/5 | Transfer Ref #Ope82Sl8CT to Savings Xxxxxx5914 | | | 25.00 | |
| 5/5 | Check | 5029 | | 1,100.00 | |
| 5/5 | Check | 5030 | | 4,400.00 | 1,237,650.65 |
| 5/6 | WT Fed#08537 Bank of America, N /Org=Lawyers Title of Nevada, Inc. Srf# 2010050600230842 Trn#100506062983 Rfb# 29969388 | | 50,000.00 | | |
| 5/6 | Check | 5031 | | 550.00 | 1,287,100.65 |
| 5/10 | Check Crd Purchase 05/08 Dtv*DIRECTVService 800-347-3288 CA 434257Xxxxxx5801 129040012777124 ?MoC=4899 321270742DA01 | | | 151.08 | |
| 5/10 | Check Crd Purchase 05/08 Red Rock Htl ResLas Vegas NV 434257Xxxxxx5801 129040019299570 ?MoC=7011 321270742DA01 | | | 95.20 | 1,286,854.37 |
| 5/12 | Wire Trans Svc Charge - Sequence: 100512064966 Srf# Fw04401132385849 Trn#100512064966 Rfb# | | | 20.00 | |
| 5/12 | Reversal of Wire Transfer Charges | | 20.00 | | |
| 5/12 | Transfer Ref #Opebxvsjgp to Checking Xxxxxx6466 | | | 130,000.00 | |
| 5/12 | WT Fed#04718 First American Tru /Ftr/Bnf=First American Title Insurance CO Srf# Fw04401132385849 Trn#100512064966 Rfb# | | | 192,000.00 | 964,854.37 |
| 5/17 | POSPurchase - 05/14 Mach ID 000000 #06110 Albertso#06110 Albhuntington B CA 5801 ?MoC=5411 321270742DA | | | 90.00 | |
| 5/17 | POSPurchase - 05/14 Mach ID 000000 #06110 Albertso#06110 Albhuntington B CA 5801 ?MoC=5411 321270742DA | | | 51.41 | |
| 5/17 | POSPurchase - 05/17 Mach ID 000000 Roma Deli & Rearoma Deli Las Vegas NV 5812 ?MoC=5812 321270742DA | | | 23.13 | |
| 5/17 | Check Crd Purchase 05/13 Recoo*SNEWYork Pizza Las Vegas NV 434257Xxxxxx5801 136040022174587 ?MoC=5812 321270742DA90 | | | 12.43 | 964,677.40 |
| 5/18 | Check Crd Purchase 05/16 Rail Europe 800-848-7245 NY 434257Xxxxxx5801 138040005646368 ?MoC=4722 321270742DA01 | | | 1,916.00 | 962,761.40 |
| 5/25 | Check Crd Purchase 05/24 Lens.Com 888-729-5367 MO 434257Xxxxxx5801 145040010815524 ?MoC=8043 321270742DA01 | | | 297.29 | |

2840